# Exhibit A

# COMMONWEALTH OF VIRGINIA



HENRICO CIRCUIT COURT
Civil Division
4309 E. PARHAM ROAD
RICHMOND  VA  23228
(804) 501-5422

Summons

To: KNOLLINGWOOD TOWNHOUSE ASSC          Case No. 087CL20003062-00
SERVE: COMMUNITY GROUP INC R/A
3901 WESTERRE PARKWAY
SUITE 100
HENRICO VA 23233

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Thursday, May 21, 2020

Clerk of Court:  HEIDI S BARSHINGER

by _____
(CLERK/DEPUTY CLERK )

Instructions:

Hearing Official:

Attorney's name:      CALLAHAN, D PATRICK
O'HAGAN MEYER, PLLC
411 EAST FRANKLIN ST., STE 500
RICHMOND VA 23219

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR HENRICO COUNTY

| | |
|---|---|
| **DON A. DAMRON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.**   CL20-3062 |
| | ) |
| **KNOLLINGWOOD TOWNHOUSE** | ) |
| **ASSOCIATION** | ) |
| Serve: Community Group Inc., Registered Agent | ) |
| 3901 Westerre Parkway, Suite 100 | ) |
| Henrico, Virginia 23233 | ) |
| | ) |
| **and** | ) |
| | ) |
| **EQUITY EXPERTS.ORG, LLC,** | ) |
| Serve: Corporation Service Company, Registered | ) |
| Agent | ) |
| 100 Shockoe Slip, 2nd Floor | ) |
| Richmond, Virginia 23219 | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff Don Damron (hereinafter "Mr. Damron" or "Plaintiff"), by counsel, brings the

following Complaint for damages and release of lien against Defendants Knollingwood

Townhouse Association ("HOA") and equityexperts.org, LLC ("Equity") (collectively

"Defendants") for breach of contract (HOA), defamation (HOA and Equity), fraud (HOA),

violations of the Fair Debt Collection Practices Act, 15 U.S.C.A. 1692, *et seq.* ("FDCPA")

(Equity), violations of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

("VCPA") (HOA), slander of title (HOA and Equity), and unjust enrichment (HOA and Equity).

In support of his claims, Mr. Damron states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties because they all conduct business in the Commonwealth of Virginia.  Va. Code Ann. § 8.01-328.1(A)(1).

2.      Venue is proper in this Court because Mr. Damron resides in Henrico County and because the property owned by Mr. Damron, against which a lien was filed by Defendants, is located within Henrico County.  Va. Code Ann. § 8.01-262(3).

## PARTIES

3.      Mr. Damron owns and resides at the real property located at 1900 Airy Circle, Henrico, Virginia 23238 ("the Property").  Mr. Damron purchased the Property in 2011 and has regularly transacted business with HOA since that time.  Mr. Damron has also endured many harassing and frustrating interactions with Equity related to an alleged debt with HOA, which was settled by Mr. Damron in September of 2016.

4.      HOA is a nonstock corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located at 3901 Westerre Parkway, Suite 100, Richmond, VA 23233.  As a property owners association, HOA transacts business with residents, such as Mr. Damron, by collecting monthly association fees in exchange for the provision of various services to residents.

5.      Equity is a limited liability company organized under the laws of the State of Michigan with its principal place of business located at 400 Water Street, Suite 250, Rochester, Michigan 48307.  Equity is authorized to transact business in the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      Mr. Damron purchased the Property on June 13, 2011.  A copy of Mr. Damron's mortgage instrument is attached hereto as **Exhibit A**.  Mr. Damron was not provided with a copy

2

of the HOA's declaration at the time he purchased the Property, nor was he provided with the HOA's disclosure packet, as required by Virginia Code Section 55.1-1808(B).

7.     As stated in its Articles of Incorporation, a copy of which are attached hereto as **Exhibit B**, HOA was formed for the specific purpose of "maintenance, preservation and architectural control of the residence Lots and Common Area within the certain tract of property described as Knollingwood Properties." Ex. B, ¶ B.

8.     Pursuant to the Knollingwood Townhouse Declaration of Covenants, which was executed on September 22, 1983 ("the Declaration"), HOA is required to "maintain a service for the collection of garbage, trash, [sic] shall provide snow removal and grass cutting for the Common Areas as well as for the individual Lots and Shall provide street lighting where not provided by public authorities." Declaration, p. 4.  A copy of the Declaration, as amended, is attached hereto as **Exhibit C**.

9.     The HOA's assessments against residents, which currently total $201.00 per month, are to be used "exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents in the Properties and in particular for the improvement and maintenance of the Properties, services, and facilities devoted to this purpose . . . ." *Id.*, p. 3.

10.     During the latter part of 2014 and throughout 2015, Mr. Damron became increasingly frustrated with HOA's failure to address multiple maintenance issues at the Property, including: inadequate lawn care, non-existent leaf collection, broken doors attached to the gate around the Property, and dilapidated steps outside the Property which posed a safety risk ("Maintenance Issues").  Despite multiple requests by Mr. Damron over a period of several months, HOA failed to correct the Maintenance Issues or to even provide Mr. Damron with a response.  Because the HOA failed to address the Maintenance Issues, as it was required to do

3

under the terms of the Declaration, Mr. Damron stopped paying his HOA dues for several months in an effort to get HOA to address the Maintenance Issues.

11.     On December 7, 2015, HOA, by counsel, filed a warrant in debt against Mr. Damron related to the disputed HOA fee assessments related to the Maintenance Issues for the latter part of 2015 (Henrico General District Court – GV15024479-00) ("the Lawsuit").

12.     Mr. Damron discussed the Lawsuit with counsel for HOA after a return date hearing and explained to counsel that he had withheld payment of his HOA assessments until the Maintenance Issues were addressed because HOA had completely ignored his requests for months. Less than one week after the return date hearing, HOA finally addressed some of the Maintenance Issues.

13.     Counsel for HOA subsequently entered into settlement discussions with Mr. Damron regarding a payment plan for the arrearages, including attorneys' fees, penalties and other costs charged to Mr. Damron by HOA.  Mr. Damron and counsel for HOA, acting as agent of the HOA, subsequently agreed to a six (6) month payment plan.  A copy of the correspondence between Mr. Damron and counsel for HOA regarding the payment plan is attached hereto as **Exhibit D**.

14.     In order to prevent any negative impact on his efforts to become a licensed financial advisor (which he successfully completed in 2018), Mr. Damron was asked by his employer's compliance officer to obtain written verification of the settlement with HOA.  On September 15, 2016, Mr. Damron and counsel for HOA, acting as agent of HOA, entered into a written Settlement Agreement and Release ("the Settlement").  A copy of the Settlement is attached hereto as **Exhibit E**.

4

15.     The Settlement affirmed Mr. Damron's prior catch-up payments totaling $2,094.35 in accordance with the schedule agreed to by counsel for HOA.  Ex. E.  Pursuant to the terms of the Settlement, HOA "release[d] and forever discharge[d] Damron from all claims, actions, causes of action and suits of every kind, arising from, pertaining to or relating to the Lawsuit as of the date of [the] Agreement upon receipt and sufficiency of one payment of $298.27 . . . as consideration of this Agreement." *Id* at ¶ 2.  The final payment, like the prior catch-up payments, was to be paid to counsel for HOA. *Id*.  Mr. Damron made the final payment, in cash, at the time the Settlement was executed by handing the cash payment to counsel for HOA.

16.     On September 16, 2016, counsel for HOA notified the Henrico County General District Court that the Lawsuit was dismissed with prejudice pursuant to a settlement between the parties ("Dismissal Notice").  A copy of the Dismissal Notice is attached hereto as **Exhibit F**.

17.     On September 26, 2016—a mere ten (10) days after the Settlement was executed— Equity sent its initial debt collection notice to Mr. Damron ("Initial Notice").  A copy of the Initial Notice is attached hereto as **Exhibit G**.  The Initial Notice informed Mr. Damron that, according to the HOA, he had "not paid [his] share of the Association's assessments and [his] total unpaid balance [was] $2,485.23" ("Alleged Debt"). Ex. G.

18.     The same day that Mr. Damron received the Initial Notice, Equity contacted him by phone in an effort to collect on the Alleged Debt.  During this call, Mr. Damron refuted the existence of the Alleged Debt, demanded verification of the same, and informed Equity that the unpaid HOA fees had been satisfied and the Lawsuit dismissed pursuant to the Settlement.  Mr. Damron also forwarded a copy of the Settlement to an Equity representative.

19.     After receiving the Initial Notice, Mr. Damron contacted counsel for HOA. Counsel for HOA indicated that there must have been some kind of mix up because the Alleged

5

Debt had been paid in full pursuant to the Settlement. Counsel for HOA promised to contact Equity and HOA to let them know that the Alleged Debt had been extinguished pursuant to the Settlement.

20.     Mr. Damron has timely paid his post-Settlement HOA assessments by monthly checks sent directly to HOA. Mr. Damron continues to make timely assessment payments directly to HOA. Equity nonetheless appears to have applied many of Mr. Damron's post-Settlement payments toward the Alleged Debt, which was satisfied and extinguished by way of the Settlement.

21.     Equity continued sending letters and making monthly phone calls to Mr. Damron (most of which lasted at least forty-five minutes) throughout 2016 and into 2017. For the first several months after he received the Initial Notice, Mr. Damron would field multiple calls from Equity each week, including calls placed to Mr. Damron's employer. During each call, Mr. Damron would refute the Alleged Debt and demand validation, but he was continually routed to different individuals, most of whom claimed to have no knowledge of the Settlement. Mr. Damron was never provided with validation of the Alleged Debt. By April 7, 2017, Equity claimed the Alleged Debt had increased to $3,596.96. A copy of Equity's April 7, 2017 letter to Mr. Damron is attached hereto as **Exhibit H**.

22.     Equity continued to make harassing and excruciatingly unproductive calls to Mr. Damron for the remainder of 2017 and into early 2018. During each call, Mr. Damron would refute the indebtedness and ask for someone to explain the basis for the Alleged Debt, including the source of the alleged principal. Equity's representatives would promise to look into the matter, but no corrective action was ever taken. Mr. Damron continued to make timely payments to HOA for new assessments as they became due and owing.

6

23.     On March 12, 2018, Mr. Damron received a letter from HOA claiming that he continued to owe HOA for prior years' assessments.  A copy of the March 12, 2018 letter from HOA is attached hereto as **Exhibit I**.  HOA threatened to take Mr. Damron off of the monthly installment plan (which he had always been on) for the 2018 assessments if the prior years' assessments were not paid in full by March 27, 2018.  Ex. I.

24.     After receiving the March 12, 2018 letter from HOA, Mr. Damron once again contacted HOA in order to dispute the Alleged Debt, as well as the apparent misallocation of his HOA assessment payments.  Mr. Damron sent HOA a copy of his correspondence with counsel for HOA, as well as a copy of the Settlement.  Representatives of HOA claimed to have no knowledge of the payment plan or the Settlement.  Mr. Damron asked for validation of the Alleged Debt, as well a statement of his account reflecting all payments and amounts allegedly owed.  HOA did not produce the requested materials, nor did it offer Mr. Damron a substantive response.

25.     Mr. Damron continued to make timely assessment payments to HOA for the remainder of 2018, however, HOA would often delay cashing these checks for up to a month.  Equity continued its harassing and time-consuming calls to Mr. Damron on a monthly basis.  Mr. Damron accepted most if not all calls, during which time he disputed the Alleged Debt and objected to the application of current HOA assessment payments to the Alleged Debt.  At no time did Mr. Damron ever make a payment directly to Equity.  Equity took no corrective action, nor did it take any steps to provide Mr. Damron with validation of the Alleged Debt.

26.     Mr. Damron continued to make timely payments for HOA assessments as they became due each month in 2019.  The harassing calls and letters from Equity continued throughout 2019.  Unbeknownst to Mr. Damron, Equity, acting as an agent of HOA, filed and recorded a Memorandum of Lien against the Property on July 11, 2019 ("the Lien").  A copy of the lien

instrument filed by Equity is attached hereto as **Exhibit J**.  Equity failed to provide Mr. Damron

with ten days' advanced notice of the Lien before recording it with the Clerk of Court, as required

by Virginia Code Section 55.1-1833(C).  In fact, Mr. Damron did not become aware of the Lien

until months later.

27.     According to the Lien, Mr. Damron did not make any payments toward his 2018

assessments, despite HOA having cashed an assessment fee check from Mr. Damron for each and

every month of 2018.  When combined with purported and unspecified recording fees, attorneys'

fees, and collection costs, the Lien included an alleged indebtedness of $3,700.78.

28.     On November 12, 2019, unbeknownst to Mr. Damron, Equity filed and recorded a

Deed of Appointment of Trustee by which it appointed Patriot Trustee Service, LLC as Trustee

for the purpose of selling the Property at a foreclosure sale ("Trustee Appointment").  A copy of

the Trustee Appointment is attached hereto as **Exhibit K**.  Mr. Damron did not receive notice of

the Trustee Appointment from Equity.

29.     Due to a favorable interest rate climate during the latter part of 2019, Mr. Damron

desired to re-finance his mortgage on the Property.  When he initially applied for the re-finance in

December of 2019, Mr. Damron received a favorable interest rate (based on his credit history)

which would have resulted in a significantly lower monthly payment on a 30-year mortgage.  As

the underwriting process moved forward, however, Mr. Damron's new mortgage lender, Royal

United Mortgage, LLC ("Royal United" or "the Mortgage Company"), discovered the Lien.

30.     Royal United subsequently received correspondence from Equity, sent on its own

behalf and as agent for HOA, which indicated that Mr. Damron owed the HOA $8,738.84 for

unpaid assessments, including a principal balance of $4,343.18 and unspecified collection and

legal fees totaling $4,395.66 ("HOA Status Letter").  A copy of the HOA Status Letter dated

January 9, 2020, as well as Mr. Damron's correspondence with Royal United regarding the same, is attached hereto as **Exhibit L**.

31.     Although the HOA Status Letter was addressed directly to Mr. Damron, it was, in fact, sent directly from Equity to Royal United, who then forwarded the HOA Status Letter to Mr. Damron.  This was the first time Mr. Damron became aware of the Lien or of the increase in the Alleged Debt as a result of unspecified collection costs and attorneys' fees.  Neither Equity nor HOA ever sent Mr. Damron a copy of the HOA Status Letter.

32.     As a direct and proximate cause of the Lien, which created a cloud on Mr. Damron's title, Mr. Damron's most favorable financing offer was no longer available to him.  Although he initially qualified for a 30-year mortgage, he was only able to obtain a 20-year mortgage due to the existence of the Lien.  Mr. Damron's interest rate was increased, and his monthly payment was adjusted upward by $220.82 compared to the initial offer.  Mr. Damron was also required to pay into escrow an additional amount sufficient to cover the Lien in the event that it was not resolved or released.

33.     On December 27, 2019, Equity sent Mr. Damron notice of its intent to foreclose on the Property due to his failure to satisfy the Lien ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached hereto as **Exhibit M**.  Mr. Damron did not receive the Foreclosure Notice until after he learned about the Lien from the Mortgage Company.  The Foreclosure Notice was the first communication Mr. Damron received from Equity regarding the Lien or the purported indebtedness for 2018 assessments.  By way of the Foreclosure Notice, Equity informed Mr. Damron that the Lien amount was $3,700.78 but that there *might be* additional outstanding balances not reflected in the Lien.  Ex. M.  Mr. Damron was directed to make *full payment on the*

*account*—including unspecified outstanding balances not stated in the Foreclosure Notice—by February 25, 2020, or Equity would foreclose on the Property to satisfy the Lien.  *Id.*

34.    Upon information and belief, the Lien was paid by the Mortgage Company, without Mr. Damron's knowledge or approval, in order to clear title to the Property.

35.    Upon information and belief, the Lien has not been released by Equity or by HOA.

### COUNT ONE – BREACH OF CONTRACT (AGAINST HOA)

36.    Mr. Damron incorporates Paragraphs 1 through 35 of the Complaint as if each were set forth in full below.

37.    The Settlement is a valid and enforceable contract by and between Mr. Damron and HOA.  The Settlement was supported by consideration in the form of payments made by Mr. Damron to HOA in order to "settle, resolve and dispose of any and all of the claims that have been, or could have been, asserted in the Lawsuit . . . ."  Ex. E.

38.    There was a meeting of the minds between Mr. Damron and HOA regarding the terms of the Settlement.

39.    HOA materially breached the Settlement by initiating collection actions against Mr. Damron shortly after the Settlement was executed.  Despite multiple opportunities to correct the misallocation of Mr. Damron's assessment payments and to mitigate damages caused by its breach of the Settlement, HOA persisted in its efforts, both on its own and through its agents, to collect on the Alleged Debt, which was satisfied and extinguished as a result of the Settlement.

40.    As a result of HOA's material breach of the Settlement, Mr. Damron has been forced to endure years of harassing collections calls, which negatively impacted his ability to earn a living as a financial advisor.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as

embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT TWO – CONSTRUCTIVE FRAUD (AGAINST HOA)

41.    Mr. Damron incorporates Paragraphs 1 through 40 of the Complaint as if each were set forth in full below.

42.    HOA, by counsel, falsely represented to Mr. Damron that if he adhered to the agreed payment schedule, as described in the Settlement, then the Alleged Debt, and any claims arising thereunder, would be forever resolved and extinguished, the Lawsuit would be dismissed, and Mr. Damron would avoid any collections activities related to the Alleged Debt ("False Representations").

43.    The False Representations induced Mr. Damron to make the Settlement payments, including the final payment made at the time the Settlement was executed. The False Representations were thus a material component of the Settlement upon which Mr. Damron relied when entering into the Settlement.

44.    HOA knew or should have known that a reasonable person would rely upon the False Representations as a material inducement to enter into the Settlement.

45.    Rather than abiding by the terms of the Settlement and following through on the False Representations, HOA initiated collections actions against Mr. Damron shortly after the Settlement was executed.

46.    Despite exercising due diligence—including repeated requests for validation of, or information related to, the Alleged Debt—Mr. Damron did not discover the False Representations

11

until January of 2020 when the Mortgage Company notified him of the Lien.  Mr. Damron relied upon the statements by representatives of HOA and Equity, as agent of HOA, that, *inter alia*, there was likely a mistake in the records, someone was going to look into it, and the matter would eventually be resolved.

47. As a result of Mr. Damron's reliance upon the False Representations, he has been forced to endure countless harassing and unproductive collections calls, which negatively impacted his ability to earn a living as a licensed financial advisor.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

### COUNT THREE – FRAUDULENT INDUCEMENT (AGAINST HOA)

48. Mr. Damron incorporates Paragraphs 1 through 47 of the Complaint as if each were set forth in full below.

49. At the time the Settlement was executed, HOA had the present intention not to perform its obligations under the Settlement, as evidenced by its referral of the Alleged Debt to Equity for collections, despite Mr. Damron's satisfaction of the Alleged Debt and the dismissal of the Lawsuit pursuant to the Settlement.

50. HOA knew that the False Representations were a material component of the Settlement, which induced Mr. Damron to enter into the Settlement.

51.     Mr. Damron had a right to rely upon the False Representations, which were the product of good faith negotiations with HOA.  Mr. Damron did in fact rely upon the False Representations by HOA when he entered into the Settlement on September 14, 2016.

52.     Despite exercising due diligence—including repeated requests for validation of, or information related to, the Alleged Debt—Mr. Damron did not discover the False Representations until the Mortgage Company notified him of the Lien in January of 2020.  Mr. Damron relied upon the statements by representatives of HOA and Equity, as agent of HOA, that, *inter alia*, there was likely a mistake in the records, someone was going to look into it, and the matter would eventually be resolved.

53.     As a result of HOA's fraudulent inducement, which induced Mr. Damron to enter into the Settlement, he has been forced to endure years of harassing collections calls, which negatively impacted his ability to earn a living as a financial advisor.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

### COUNT FOUR – DEFAMATION *PER SE* (AGAINST HOA AND EQUITY)

54.     Mr. Damron incorporates Paragraphs 1 through 53 of the Complaint as if each were set forth in full below.

55.     Each time Mr. Damron received a collection call or letter from HOA or Equity, he refuted the existence of the Alleged Debt, demanded validation of the same, and vehemently denied missing any assessment payments.  Accordingly, HOA and Equity knew, should have

known after a reasonable investigation, and/or recklessly disregarded that the Alleged Debt was extinguished by way of the Settlement.

56.     Despite knowing, failing to investigate, and/or recklessly disregarding that the Alleged Debt was extinguished by the Settlement, Equity, acting on its own behalf and as the agent of HOA, filed the Lien on July 11, 2019, without sending notice to Mr. Damron by certified mail, as required by law.  Va. Code Ann. § 55.1-1833(A).

57.     The Lien contains demonstrably false information, including the allegation that Mr. Damron owed $3,700.78 because he failed to make any HOA assessment payment from August 1, 2018 through July 1, 2019, when, in fact, Mr. Damron made timely payments for each of those months by submitting $201.00 checks directly to HOA.  HOA subsequently cashed each of these checks, although it would often wait a month or more to cash each check.  The Lien also contained false information regarding HOA's and/or Equity's entitlement to collection costs, lien recording fees and attorneys' fees as a result of Mr. Damron's alleged failure to make assessment payments from August 1, 2018 through July 1, 2019.  Because Mr. Damron timely made all post-Settlement assessment payments, neither HOA nor Equity was entitled to collect costs and/or fees expended in pursuing collection of bogus debts.

58.     Despite knowing, failing to investigate and/or recklessly disregarding that the Alleged Debt was extinguished by the Settlement, and that Mr. Damron made timely assessment fees each and every month since the Settlement was executed, Equity, acting on its own behalf and as the agent for HOA, sent the HOA Status Letter to Royal United on or about January 9, 2020. Although Mr. Damron was listed as the recipient of the HOA Status Letter, the letter was intended for and sent to Royal United.  Neither Equity nor HOA ever sent a copy of the HOA Status Letter to Mr. Damron.

59.     The HOA Status Letter contained demonstrably false information by stating that Mr. Damon owed a total of $8,738.84—with $4,343.18 in principal and $4,395.66 in unspecified collection costs and legal fees—for association dues owed to HOA, when, in fact, Mr. Damron made timely payments for all post-Settlement assessment fees.

60.     The Lien and the HOA Status Letter contained provably false information, yet both were offered to third parties as statements of fact.

61.     By filing the Lien and publishing the HOA Status Letter to a third party, HOA and Equity made false and defamatory statements about Mr. Damron that prejudiced him in his profession as a financial advisor, thus constituting defamation *per se*.

62.     As a result of the Lien and the HOA Status Letter, Mr. Damron suffered, and continues to suffer, damage to his reputation for sound financial management, which has prejudiced him in his profession as a financial advisor with fiduciary duties to his clients.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT FIVE – DEFAMATION (AGAINST EQUITY AND HOA)

63.     Mr. Damron incorporates Paragraphs 1 through 62 of the Complaint as if each were set forth in full below.

64.     Despite Mr. Damron's repeated claim that that the Alleged Debt was extinguished by the Settlement, and despite knowing, failing to investigate, and/or recklessly disregarding that

Mr. Damron made timely payments for all post-Settlement HOA assessments, Equity, acting on its own behalf and as agent for HOA, filed the Lien and sent the HOA Status Letter to Royal United.

65.     HOA and Equity either knew that the Lien and HOA Status Letter contained false information about Mr. Damron's assessment payment history or, believing them to be true, lacked reasonable grounds for their belief and acted negligently and/or with reckless disregard by failing to ascertain the facts upon which the Lien and HOA Status Letter were based.

66.     As a result of the Lien and the HOA Status Letter, Mr. Damron's reputation was injured, including his reputation for sound financial management in carrying out his fiduciary duties to his clients.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

### COUNT SIX – VIOLATION OF 15 U.S.C.A. § 1692g(a) – CONTENTS OF DEBT NOTICE (AGAINST EQUITY)

67.     Mr. Damron incorporates Paragraphs 1 through 66 of the Complaint as if each were set forth in full below.

68.     Mr. Damron is a consumer under FDCPA in that he is a natural person who was allegedly obligated to pay a debt to HOA.

69.     The Alleged Debt arises out of a transaction entered into primarily for personal and/or household purposes, namely, the purchase and enjoyment of a primary residence.

16

70.     Equity is a debt collector within the meaning of 15 U.S.C.A. § 1692a(6), and as described by Equity in its correspondence and phone calls to Mr. Damron, because: (1) it is a legal entity whose principal purpose is to collect debts; and (2) it regularly collects debts owed to another.

71.     The Initial Notice informed Mr. Damron that unless he contested the Alleged Debt *in writing* within thirty (30) days, Equity would assume that the debt was valid.  The terms and directions of the Initial Notice violated 15 U.S.C.A. § 1692g(a) by providing inadequate notice of Mr. Damron's right to contest the validity of the Alleged Debt, which misled and confused Mr. Damron as to his right to refute the Alleged Debt, whether in writing or orally, and to demand verification of the same.

72.     As a result of Equity's failure to provide Mr. Damron with adequate notice of the Alleged Debt, he was forced to endure years of painstaking and harassing collections calls and letters.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT SEVEN – VIOLATION OF 15 U.S.C.A. § 1692g(b) – DISPUTED DEBTS (AGAINST EQUITY)

73.     Mr. Damron incorporates Paragraphs 1 through 72 of the Complaint as if each were set forth in full below.

74.     Within thirty (30) days of sending the Initial Notice (in fact, the same day that Mr. Damron received the Initial Notice), Equity called Mr. Damron for the purpose of collecting the

Alleged Debt.  During his first discussion with Equity, Mr. Damron notified Equity that he refuted

the existence of the Alleged Debt because it was extinguished pursuant to the Settlement.  Mr.

Damron also demanded that Equity provide validation of the Alleged Debt, and he refused to make

any payments toward the Alleged Debt or to have any of his current assessment payments applied

to the Alleged Debt.

75.     Despite Mr. Damron's refutation of the Alleged Debt and his request for validation

of the same, including the applicable time period for the assessment payments that he allegedly

missed, Equity nonetheless failed to provide the required validation of the Alleged Debt in

violation of 15 U.S.C.A. § 1692g(b).

76.     As a result of Equity's failure to provide Mr. Damron with verification of the

Alleged Debt, Mr. Damron was unable to ascertain the alleged time period for the missed payments

so that he could respond to the Initial Notice appropriately and prevent further harm to his

reputation or credit.  Mr. Damron continues to suffer damage to his credit history, which prevented

him from obtaining favorable financing for his mortgage on the Property, as well as

embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr.

Damron was also forced to pay an additional $220.82 per month more for his mortgage than he

would have without the Lien, as well as escrow payments sufficient to cover the amount of

indebtedness described in the HOA Status Letter.

## COUNT EIGHT – VIOLATION OF 15 U.S.C.A. § 1692c(b) – COMMUNICATION WITH THIRD PARTIES

77.     Mr. Damron incorporates Paragraphs 1 through 76 of the Complaint as if each were

set forth in full below.

78.     Unless a consumer directly provides a debt collector with express permission, or as

reasonably necessary to carry out post-judgment remedies, a debt collector "may not communicate,

in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C.A. § 1692c(b).

79.    On at least one occasion, Equity communicated with a third party regarding the Alleged Debt, notwithstanding Mr. Damron's refutation of the Alleged Debt and his demand for validation of the same.  By sending the HOA Status Letter to Royal United, Equity communicated with a third party in connection with the Alleged Debt, and/or any additional debt claimed as a result of the Alleged Debt, without authorization by Mr. Damron and without a valid and enforceable judgment against Mr. Damron, thereby violating 15 U.S.C.A. § 1692c(b).

80.    As a result of Equity's unlawful communication with third parties, including Royal United, Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT NINE – VIOLATION OF 15 U.S.C.A. § 1692c(c) – CEASING COMMUNICATION

81.    Mr. Damron incorporates Paragraphs 1 through 80 of the Complaint as if each were set forth in full below.

82.    Notwithstanding Mr. Damron's clear and unequivocal refutation of the Alleged Debt and his refusal to make any payment toward the Alleged Debt, Equity continued to contact Mr. Damron for the purpose of collecting the Alleged Debt, including as recently as December of 2019, thereby violating 15 U.S.C.A. § 1692c(c).

83.     As a result of Equity's failure to cease communications with Mr. Damron in an effort to collect the Alleged Debt, Mr. Damron was forced to endure years of harassing, time-consuming collection calls, which resulted in lost income and earning opportunities.   Mr. Damron's reputation was also injured, including his reputation for sound financial management in carrying out his fiduciary duties to his clients.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT TEN – VIOLATION OF 15 U.S.C.A. § 1692d(5) – HARASSMENT OR ABUSE

84.     Mr. Damron incorporates Paragraphs 1 through 83 of the Complaint as if each were set forth in full below.

85.     Equity made collections calls to Mr. Damron, continuously and repeatedly, for more than three years.  Equity initially contacted Mr. Damron daily, then weekly, and finally monthly.  On multiple occasions, Equity contacted Mr. Damron by calling and/or sending mailings to his place of employment.  Each call took approximately forty-five (45) minutes to an hour.  The calls were made with the intent to harass and annoy Mr. Damron so that he would settle the Alleged Debt, thereby violating 15 U.S.C.A. § 1692d(5).

86.     Although Equity made collections calls at all times of day, Mr. Damron almost always picked up the phone in a good faith effort to resolve the apparent confusion and to avoid any further collection calls.  Equity representatives would promise to look into the matter, including by validating the Alleged Debt, but Mr. Damron was forced to engage in the same

repeated and circular discussions over and over again without gaining any new information.  Mr. Damron lost significant time and income by engaging in these collection calls.

87.     As a result of Equity's harassment and abuse, which was confusing and misleading to Mr. Damron as he attempted to ascertain the basis for the Alleged Debt, Mr. Damron lost income and earning opportunities.  Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT ELEVEN – VIOLATIONS OF 15 U.S.C.A. § 1692e(2) – FALSE OR MISLEADING REPRESENTATIONS

88.     Mr. Damron incorporates Paragraphs 1 through 87 of the Complaint as if each were set forth in full below.

89.     In its numerous collection letters and calls directed to Mr. Damron—which began in September of 2016 and continued through December of 2019—Equity falsely represented the character, amount and legal status of the Alleged Debt in violation of 15 U.S.C.A. § 1692e(2)(A).

90.     Although the Alleged Debt was extinguished and the Lawsuit dismissed as a result of the Settlement, Equity continued to contact Mr. Damron and third parties in connection with an effort to collect the Alleged Debt (while denying the existence of the Settlement), which was not only false but misleading and confusing for Mr. Damron as he attempted to resolve the multiple misrepresentations and inaccuracies surrounding the Alleged Debt.

91.     By sending the HOA Status Letter, Equity also falsely represented to Royal United and, by extension, Mr. Damron, the lawful basis for the Lien as well as the speculative and

21

unsupported collection charges and fees, which more than doubled the amount of purported indebtedness related to the Lien, constituting a separate violation of 15 U.S.C.A. § 1692e(2)(B).

92.     These omissions and misrepresentations were not only false but also confusing and misleading to both Royal United and Mr. Damron as they attempted to ascertain the source of, and basis for, the Alleged Debt and additional costs and fees claimed as a result thereof.

93.     As a result of Equity's false and misleading representations, Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.  .

### COUNT TWELVE – VIOLATION OF 15 U.S.C.A. § 1692e(5) – FALSE OR MISLEADING REPRESENTATIONS

94.     Mr. Damron incorporates Paragraphs 1 through 93 of the Complaint as if each were set forth in full below.

95.     By sending the Foreclosure Notice, Equity threatened to take an action that it could not legally take, thereby violating 15 U.S.C.A. § 1692e(5).

96.     As a result of the Settlement, the Lawsuit was dismissed with prejudice and the Alleged Debt was extinguished.  Mr. Damron timely submitted all post-Settlement HOA assessment payments.  Accordingly, Equity did not have the legal right to file the Lien, let alone to conduct, or threaten to conduct, a foreclosure sale of the Property.

97.     Equity's misrepresentation in sending the Foreclosure Notice was not only false but also confusing and misleading to Mr. Damron as he attempted to ascertain the source of, and basis for, the Alleged Debt and additional costs and fees claimed as a result thereof.

98.     As a result of Equity's false and misleading representations regarding its intention to foreclose on the Property as a result of the Alleged Debt, Mr. Damron suffered lost income and earning opportunities, and he continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT THIRTEEN – VIOLATION OF 15 U.S.C.A. § 1692e(8) – FALSE OR MISLEADING REPRESENTATIONS

99.     Mr. Damron incorporates Paragraphs 1 through 98 of the Complaint as if each were set forth in full below.

100.     By sending the HOA Status Letter to Royal United, Equity communicated credit information about Mr. Damron that it knew, or which it should have known upon a reasonable investigation, was false, including the fact that Mr. Damron disputed the Alleged Debt, thereby violating 15 U.S.C.A. § 1692e(8).

101.     Equity's omissions and misrepresentations were not only false but also confusing and misleading to Mr. Damron as he attempted to ascertain the source of, and basis for, the Alleged Debt as well as additional costs and fees claimed as a result thereof.

102.     As a result of Equity's false and misleading representations, Mr. Damron suffered lost income and earning opportunities, and he continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community. Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than

he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter.

## COUNT FOURTEEN – VIOLATION OF 15 U.S.C.A. § 1692f(1) – UNFAIR PRACTICES

103.    Mr. Damron incorporates Paragraphs 1 through 102 of the Complaint as if each were set forth in full below.

104.    Upon information and belief, the amount stated in the HOA Status Letter included interest, fees, charges and/or expenses that were not expressly authorized by the Declaration or otherwise permitted by law ("Unauthorized Charges").   When the Unauthorized Charges were, upon information and belief, paid by Royal United in order to clear title on the Property (unbeknownst to Mr. Damron), Equity collected the Unauthorized Charges, thereby violating 15 U.S.C.A. § 1692f(1).

105.    As a result of Equity's unfair practices in collecting the Unauthorized Charges, Mr. Damron continues to suffer damage to his credit history, which prevented him from obtaining favorable financing for his mortgage on the Property, as well as embarrassment, humiliation, mental suffering, and damage to his standing in the community.  Mr. Damron was also forced to pay an additional $220.82 per month more for his mortgage than he would have without the Lien, as well as escrow payments sufficient to cover the amount of indebtedness described in the HOA Status Letter, which has now been paid out of escrow for the benefit of Equity and HOA without Mr. Damron's knowledge and/or acquiescence.

## COUNT FIFTEEN – VIOLATION OF FDCPA, 15 U.S.C.A. § 1692h (AGAINST EQUITY)

106.    Mr. Damron incorporates Paragraphs 1 through 105 of the Complaint as if each were set forth in full below.

107.    While he disputed the Alleged Debt, Mr. Damron continued to pay each post-Settlement assessment in the normal course by submitting monthly checks to HOA in the amount of $201.00.

108.    Despite Mr. Damron's timely payments, Equity manufactured bogus debts purportedly owed for post-Settlement HOA assessments.

109.    Equity took Mr. Damron's timely payments for current HOA assessments and misapplied them in order to pay down the Alleged Debt for pre-Settlement assessments, which Mr. Damron already had paid in full, thereby violating 15 U.S.C.A. § 1692h.  In so doing, Equity created a new debt for alleged unpaid HOA assessments when, in fact, Mr. Damron had been timely paying these new assessments as they accrued each month.

110.    Upon information and belief, Equity misapplied Mr. Damron's current HOA assessments toward the Alleged Debt, which was extinguished in 2016, in order to concoct a basis for filing the Lien, which, by law, must be done within twelve months from the creation of an indebtedness for HOA fee assessments.  Va. Code Ann. § 55.1-1833(B) ("The association, in order to perfect the lien given by this section, shall file [the memorandum of lien], before the expiration of 12 months from the time the first such assessment became due and payable . . . .").

## COUNT SIXTEEN – SLANDER OF TITLE BY FILING THE LIEN
### (AGAINST HOA AND EQUITY)

111.    Mr. Damron incorporates Paragraphs 1 through 110 of the Complaint as if each were set forth in full below.

112.    Equity, acting on its own behalf and as agent for HOA, published slanderous words about Mr. Damron when it filed the Lien on July 11, 2019.

113.    The Lien contained false statements about Mr. Damron related to the Alleged Debt, which was satisfied and extinguished by the Settlement.  Although Mr. Damron made timely

payments for all post-Settlement assessments, Equity and HOA claimed in the Lien that he failed to make any assessment payments from August 1, 2018 through July 1, 2019.  Ex. J, p. 2.  This was a blatant and demonstrably false allegation.

114.    The Lien also contained the false statement that HOA and/or Equity had incurred valid and enforceable recording costs, collection costs, and attorney's fees as a result of the claimed assessment payments from 2018 and 2019, despite the fact that Mr. Damron had timely paid each and every one of the assessments described in the Lien.

115.    In filing the Lien, HOA and Equity acted with gross indifference for the impact such statements would have on Mr. Damron, and with reckless and wanton disregard for the falsity of the statements regarding 2018 and 2019 assessments, which were timely paid in full by Mr. Damron as they became due and owing.

116.    As a result of the publication of the Lien and the HOA Status Letter, Mr. Damron suffered, and continues to suffer, damages due to the creation of a cloud on his title to the Property, which hindered the alienation and maximization of value of the Property.  Mr. Damron has also suffered, and continues to suffer, an increase to his mortgage payment on the Property, humiliation, embarrassment, and loss of standing in his community.

### COUNT SEVENTEEN – SLANDER OF TITLE BY SENDING THE HOA STATUS LETTER (AGAINST HOA AND EQUITY)

117.    Mr. Damron incorporates Paragraphs 1 through 116 of the Complaint as if each were set forth in full below.

118.    The HOA Status Letter contained demonstrably false information by stating that Mr. Damon owed a total of $8,738.84—with $4,343.18 in principal and $4,395.66 in unspecified collection costs and legal fees—for association dues owed to HOA, when, in fact, Mr. Damron

made timely payments for all post-Settlement assessment fees and owed nothing for the Alleged Debt as it was resolved and extinguished pursuant to the Settlement.

119.    In sending the HOA Status Letter, HOA and Equity acted with gross indifference for the impact such statements would have on Mr. Damron, and with reckless and wanton disregard for the falsity of the statements contained in the letter.

120.    As a result of the publication of the HOA Status Letter, Mr. Damron suffered, and continues to suffer, damages due to the creation of a cloud on his title to the Property, which hindered the alienation and maximization of value of the Property.  Mr. Damron has also suffered, and continues to suffer, an increase to his mortgage payment on the Property, humiliation, embarrassment, and loss of standing in his community.

**COUNT EIGHTEEN – VIOLATION OF VCPA, VA. CODE § 59.1-200(17)**

121.    Mr. Damron incorporates Paragraphs 1 through 120 of the Complaint as if each were set forth in full below.

122.    HOA was formed for the specific purpose of "maintenance, preservation and architectural control of the residence Lots and Common Area within the certain tract of property described as Knollingwood Properties." Ex. B, ¶ B.

123.    HOA is obligated to "maintain a service for the collection of garbage, trash, [sic] shall provide snow removal and grass cutting for the Common Areas as well as for the individual Lots." Ex. C, p. 4.

124.    Assessments charged by HOA must be used "exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents in the Properties and in particular for the improvement and maintenance of the Properties, services, and facilities devoted to this purpose . . . ." *Id.*, p. 3.

125.    By purchasing the Property and paying monthly assessments in exchange for the provision of personal and household services, including the Maintenance Issues, Mr. Damron entered into a consumer transaction with HOA within the meaning of the VCPA.

126.    HOA fraudulently misrepresented to Mr. Damron that it would supply maintenance services, including the Maintenance Issues, in exchange for monthly fee assessments.

127.    Mr. Damron relied upon HOA's fraudulent misrepresentation as a material inducement to payment of his monthly HOA assessments.

128.    For several months in 2014 and 2015, HOA failed to provide maintenance services to Mr. Damron, or to address the Maintenance Issues, despite numerous reminders from Mr. Damron that such services were necessary and required as part of his consumer transaction with HOA.

129.    Mr. Damron suffered damages as a result of HOA's failure to address the Maintenance Issues, including lost value to, and enjoyment of, the Property.

130.    HOA did not begin to address the Maintenance Issues until several months after it filed the Lawsuit against Mr. Damron.  In order to resolve their dispute related to the Maintenance Issues, which was the subject of the Lawsuit, HOA and Mr. Damron entered into the Settlement.

131.    HOA failed to adhere to the terms and conditions of the Settlement by, *inter alia*: engaging Equity in order to initiate collections activities related to the Alleged Debt; misallocating payments in order to create new alleged debts; filing the Lien and creating a cloud on Mr. Damron's title to the Property; communicating false information related to the Alleged Debt to third parties, including the Mortgage Company; and initiating foreclosure proceedings on the Property as a result of the Alleged Debt.  By failing to adhere to the terms and conditions of the Settlement, HOA violated Va. Code § 59.1-200(17).

### COUNT NINETEEN – UNJUST ENRICHMENT (EQUITY AND HOA)

132.    Mr. Damron incorporates Paragraphs 1 through 131 of the Complaint as if each were set forth in full below.

133.    Upon information and belief, the Mortgage Company paid the amount described in the HOA Status Letter to Equity and/or HOA, unbeknownst to Mr. Damron, in order to extinguish the Lien and clear title to the Property.

134.    HOA and Equity knew, or should have known upon a reasonable investigation, that they were receiving an unlawful benefit when the Mortgage Company paid to them the amount specified in the HOA Status Letter.

135.    Because the Lien and the amount specified in the HOA Status Letter were based upon the Alleged Debt—which was satisfied and extinguished by the Settlement—and upon post-Settlement assessment payments—all of which were timely paid by Mr. Damron—it would be inequitable and unjust for HOA and/or Equity to retain the amount paid to them, upon information and belief, by the Mortgage Company.  Accordingly, HOA and/or Equity should be ordered to repay to Mr. Damron any and all funds received by them from the Mortgage Company.

### PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Mr. Damron respectfully requests that the Court find in his favor and against HOA and/or Equity as to each of the Counts included herein, and that it grant and award Mr. Damron the following:

1. Compensatory damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000.00) for lost wages, mental pain and suffering, increased home mortgage financing costs, escrow costs to cover the Lien, and reputational damage;

29

2. Reasonable attorneys' fees and costs expended in bringing the present action in accordance with Va. Code Ann. § 59.1-204(B) and 15 U.S.C.A. § 1692k(a)(3);

3. Civil penalties against Equity in the amount of Twelve Thousand Dollars ($12,000.00) in accordance with 15 U.S.C.A. § 1692k(A)(2)(a);

4. Civil penalties against HOA by trebling the amount of actual damages to be proven at trial, or by trebling the civil penalties assessed against HOA for willful violations of the VCPA, in accordance with Va. Code. Ann. § 59.1-204(A).

5. Punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00) to deter such unlawful actions by HOA and Equity in the future; and

6. Such other relief as the Court finds necessary in the interests of justice.

Dated: May 19, 2020

Respectfully submitted,

DON DAMRON

Charles G. Meyer, III (VSB No. 34146)
D. Patrick Callahan (VSB No. 87366)
Katherine M. Rockwell (VSB No. 93733)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 403-7110
Email: *cmeyer@ohaganmeyer.com*
Email: *pcallahan@ohaganmeyer.com*
Email: *krockwell@ohaganmeyer.com*

*Counsel for Plaintiff*



LR 201100018846 07/05/2011 2:08:00 PM

Instrument Control Number

[                    ]

BK4889PG0873

**Commonwealth of Virginia**
**Land Record Instruments**
**Cover Sheet - Form A**

[ILS VLR Cover Sheet Agent 1.0.93]

| | | | |
|---|---|---|---|
| Date of Instrument: | [6/13/2011 ] | | |
| Instrument Type: | [DBS ] | | |
| Number of Parcels | [ 1] | | |
| Number of Pages | [ 3] | | |
| City ☐ County [x] | [Henrico County | ] | (Box for Deed Stamp Only) |

**First and Second Grantors**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Fannie Mae ] | [Federal National Mortgage ] | [ ] | AKA |
| [ ] | [ ] | [ ] | [ ] |

**First and Second Grantees**

| Last Name | First Name | Middle Name or Initial | Suffix |
|---|---|---|---|
| [Damron ] | [Don ] | [A. ] | [ ] |
| [ ] | [ ] | [ ] | [ ] |

| | | |
|---|---|---|
| Grantee Address | (Name) | [Don A. Damron ] |
| | (Address 1) | [1900 Airy Circle ] |
| | (Address 2) | [ ] |
| | (City, State, Zip) | [Henrico ] [VA ] [23238 ] |
| Consideration [115,000.00 ] Existing Debt [0.00 ] Assumption Balance [149,300.00 ] |

| | | | |
|---|---|---|---|
| Prior Instr. Recorded at: City ☐ County [x] | [Henrico County ] | Percent. in this Juris. | [ 100] |
| Book [ ] Page [ ] | | Instr. No [ ] | |
| Parcel Identification No (PIN) | [7347495417 ] | | |
| Tax Map Num.   (if different than PIN) | [7347495417 ] | | |
| Short Property Description | [Unit 1, Bldg. X, Sect. A ] | | |
| | [Knollingwood Townhouses ] | | |
| Current Property Address (Address 1) | [1900 Airy Circle ] | | |
| | (Address 2) [ ] | | |
| | (City, State, Zip) [Henrico ] [VA ] [23238 ] | | |

| | | |
|---|---|---|
| Instrument Prepared By | [Samuel I. White, PC ] |
| Recording Paid for By | [Emerson P. Allen ] |
| Return Recording To (Name) | [Emerson P. Allen ] |
| (Address 1) | [103 Twinridge Lane ] |
| (Address 2) | [ ] |
| (City, State, Zip) | [Richmond ] [VA ] [23235 ] |
| Customer Case ID | [ ] [ ] [ ] |

Cover Sheet Page # 1 of 1

**EXHIBIT A**

BK4889PG0874

Exemption from recording taxes under Code of Virginia Section 58.1-811.C.4.

Title CO: Southern Title INS Co.

**TAX ID#:**     **734-749-5417**

**CONSIDERATION: $115,000.00**

**ASSESSMENT $** 149,300

**FANNIE MAE A/K/A FEDERAL NATIONAL MORTGAGE ASSOCIATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, GRANTOR**

**TO**

**DON A. DAMRON, GRANTEE**

THIS DEED, made this 13th day of June, 2011, by and between **FANNIE MAE A/K/A FEDERAL NATIONAL MORTGAGE ASSOCIATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, GRANTOR,** party of the first part; and, **DON A. DAMRON, GRANTEE,** party of the second part, whose mailing address is: **1900 AIRY CIRCLE, HENRICO, VIRIGNIA 23238**

WITNESSETH:

That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the said parties of the first part does hereby bargain, sell, grant and convey, with SPECIAL WARRANTY unto, **DON A. DAMRON, GRANTEE,** party of the second part, the following described property, to wit:

**SEE ATTACHED EXHIBIT "A", MADE A PART HEREOF**

This conveyance is made subject to any and all covenants, conditions, restrictions and easements, if any, affecting the aforesaid property and constituting constructive notice.

The existence of title insurance is unknown to the preparer.

Prepared by and return to:
Samuel I. White, PC
410 N. Center Dr., Ste. 200
Chesapeake Bldg. #9
Norfolk, VA 23502
**70-027783-10**

EMERSON P. ALLEN
ATTORNEY AT LAW
103 Twinridge Lane
Richmond, Virginia 23235

BK4889PG0875

IN WITNESS WHEREOF, **FANNIE MAE A/K/A FEDERAL NATIONAL MORTGAGE ASSOCIATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA**, has caused this to be executed in its name(s).

FANNIE MAE A/K/A FEDERAL NATIONAL MORTGAGE ASSOCIATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA

By_____

Rosalie K. Doggett of Samuel I. White, P.C. as Attorney in Fact for Fannie Mae A/K/A Federal National Mortgage Association, Organized and Existing Under the Laws of the United States of America

STATE OF ___Virginia___

CITY/~~COUNTY~~ OF ___Norfolk___, to-wit:

The foregoing instrument was acknowledged before me this ___13th___ day of ___June___, 2011, by ___Rosalie K. Doggett___, of **SAMUEL I. WHITE, P.C., AS ATTORNEY-IN-FACT FOR FANNIE MAE A/K/A FEDERAL NATIONAL MORTGAGE ASSOCIATION, ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA.**

_____
Notary Public                    #

My Commission Expires: __11/30/14__

70-027783-10

2

BK4889PG0876

EXHIBIT "A"

LEGAL DESCRIPTION FOR

1900 AIRY CIRCLE, HENRICO, VIRIGNIA 23238

ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, KNOWN AS UNIT 1, BUILDING X, SECTION A, KNOLLINGWOOD TOWNHOUSES, TOGETHER WITH ALL IMPROVEMENTS THEREON AND APPURTENANCES THERETO BELONGING, LYING AND BEING IN TUCKAHOE MAGISTERIAL DISTRICT, HENRICO COUNTY, VIRGINIA, AS SHOWN ON PLAT OF SURVEY BY J.K. TIMMONS & ASSOCIATES, INCORPORATED, CONSULTING ENGINEERS, DATED SEPTEMBER 14, 1983, RECORDED OCTOBER 3, 1983, IN THE CLERK'S OFFICE, CIRCUIT COURT, HENRICO COUNTY, VIRGINIA, IN PLAT BOOK 75, PAGES 87A AND 88, REFERENCE TO WHICH IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION THEREOF.

IT BEING the same property conveyed to FEDERAL NATIONAL MORTGAGE ASSOCIATION by Trustee's Deed from Professional Foreclosure Corporation of Virginia, Substitute Trustee, a Virginia Corporation, and original deed of trust maker(s) John Albrecht, by and thru Foreclosure Sale conducted on July 29, 2010 and Substitute Trustee's Deed dated and executed on August 10, 2010 and recorded September 10, 2010 in Deed Book 4800 at Page 0227 among the land records in the Office of the Clerk of the Circuit Court of the County of Henrico, Virginia.

POWER OF ATTORNEY from Fannie Mae to Samuel I. White, P.C., dated October 20, 2008 and recorded April 17, 2009 in Deed Book 4629 at Page 0367 among the land records of the County of Henrico, Virginia has not rescinded.

INSTRUMENT #18846
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
JULY  5, 2011 AT 02:06PM

YVONNE G. SMITH, CLERK
RECORDED BY: MMM

3

SCC9A

253071

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

RICHMOND, March 2, 1984

The accompanying articles having been delivered to the State Corporation Commission on behalf of

KNOLLINGWOOD TOWNHOUSE ASSOCIATION

and the Commission having found that the articles comply with the requirements of law and that all required fees have been paid, it is

ORDERED that this CERTIFICATE OF INCORPORATION

be issued, and that this order, together with the articles, be admitted to record in the office of the Commission; and that the corporation have the authority conferred on it by law in accordance with the articles, subject to the conditions and restrictions imposed by law.

STATE CORPORATION COMMISSION

By _Thomas P. Harwood_____
                    **Commissioner**

EXHIBIT B

ARTICLES OF INCORPORATION

OF

KNOLLINGWOOD TOWNHOUSE ASSOCIATION

We hereby associate to form a non-stock corporation under the provisions of Chaper II of Title 13.1 of the Code of Virginia, and to that end set forth the following:

A.  The name of the corporation is Knollingwood Townhouse Association.

B.  The Association does not contemplate pecuniary gain or profit to the members thereof, and the specific purposes for which it is formed are to provide for maintenance, preservation and architectural control of the residence Lots and Common Area within that certain tract of property described as Knollingwood Properties, consisting of approximately 14 acres in Tuckahoe Magisteral District, Henrico County, Virginia, and any additions thereto, and to promote the health, safety and welfare of the residents within the above described property and any additions thereto as may hereafter be brought within the jurisdiction of this Association for this purpose to:

(a)  exercise all of the powers and privileges and to perform all of the duties and obligations of the Association as set forth in that certain Declaration of Covenants, conditions and Restrictions, hereinafter called the "Declaration," applicable to the property and recorded or to be recorded in the Clerk's Office of the Circuit Court of Henrico County, Virginia and as the same may be amended from time to time as therein provided (for the purposes hereof the initial Owner of

the property subject to the Delcaration, being the party executing the Declaration, shall be referred to as "Declarant");

(b)   fix, levy, collect, and enforce payment by any lawful means, all charges or assessments pursuant to the terms of the Declaration; to pay all expenses in connection therewith and all office and other expenses incident to the conduct of the business of the Association, including all licenses, taxes or governmental charges levied or improved against the property of the Association;

(c)   acquire (by gift, purchase or otherwise), own, hold, improve, build upon, operate, maintain, convey, sell, lease, transfer, dedicate for public use or otherwise dispose of real or personal property in connection with the affairs of the Association;

(d)   borrow money, and with the assent of more than two-thirds (2/3) of each class of members of the Association mortgage, pledge, deed in trust, or hypothecate any or all of its real or personal property as security for money borrowed or debts incurred;

(e)   dedicate, sell or transfer all or any part of the Common Area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members.  No dedication or transfer shall be effective unless more than two thirds '2/3) of each class of members of the Association shall assent to such dedication, sale or transfer;

(f)   participate in mergers and consolidations with other non-profit corporations organized for the same purposes or annex additional residential property and Common Area, provided

that any such merger, consolidation or annexation shall have the assent of more than two-thirds (2/3) of the votes of each class of members of the Association.

(g)  have and to exercise any and all powers, rights and privileges which a corporation organized under the Virginia Non-Stock corporation Act by law may now or hereafter have or exercise.

C.  Every person or entity who is a record owner of a fee or undivided fee interest in any Lot which is subject by covenants of record to assessment by the Association, including contract sellers, shall be a member of the Association.  The foregoing is not intended to include persons or entities who hold interest merely as security for the performance of an obligation. Membership shall be appurtenant to and may not be separated from ownership of any Lot which is subject to assessment by the Association.

The association shall have two classes of voting membership.

Class A.  Class A members shall be all Owners with the exception of the Declarant and shall be entitled to one vote for each Lot owned.  When more than one person holds an interest in any Lot, all such persons shall be members.  The vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any Lot.

Class B.  The Class B member shall be the Declarant and shall be entitled to three (3) votes for each Lot owned.  The Class B membership shall cease and be converted to Class A

membership on the happening of either of the following events, whichever occurs earlier:

     (a) when the total votes outstanding in the Class A membership equal the total votes outstanding in the Class B membership; or

     (b) on January 1, 1985.

D. The number of Directors constituting the initial Board of Directors is one (1) and the name of the Director who will serve as the initial Director is:

| Name | Address |
|---|---|
| John S. Napier | 1306 Gaskins Road, Suite A<br>Richmond, Virginia  23233 |

The said directors shall serve until the first annual meeting of members of the Association at which meeting successor directors will be elected. Thereafter the Board of Directors will consist of such number as is fixed by the by-laws.

E. The post office address of the initial registered office is 3000 Idlewood Avenue, P. O. Box 7268, Richmond, Virginia  23221. The name of the City in which the initial registered office is located in the City of Richmond, Virginia. The name of its registered agent is Robert B. Brown, who is a resident of Virginia, a member of the Virginia State Bar, and whose business office is the same as the registered office of the corporation.

F. The Association may be dissolved with the assent of not less than two thirds (2/3) of each class of members of the Association. Upon dissolution of the Association, other than

incident to a merger or consolidation, the assets of the Association shall be dedicated to an appropriate public agency to be used for purposes similar to those for which this Association was created.  In the event that such dedication is refused acceptance, such assets shall be granted, conveyed and assigned to any nonprofit corporation, association, trust or other organization to be devoted to such similar purposes.

G.  The corporation shall exist perpetually.

H.  Amendment of these Articles shall require the assent of members having more than seventy-five percent (75) of the entire membership.

I.  So long as there is a Class B membership, the following actions will require the prior approval of the Federal Housing Administration or the Veterans Administration:  annexation of additional properties, mergers and consolidations, mortgaging or dedication of the Common Area, dissolution and amendement of these Articles.

Incorporator

LAW OFFICES

# BROWN, BRUNER & COOLEY

3000 IDLEWOOD AVENUE

RICHMOND, VIRGINIA 23221

ROBERT B. BROWN
FREDERICK M. BRUNER II
CRAIG S. COOLEY
LEARNED D. BARRY

February 14, 1984

POST OFFICE BOX 7268
TELEPHONE (804) 358-2828

FILE NO.

Clerk
State Corporation Commission
Post Office Box 1197
Richmond, Virginia 23209

Re:  Knollingwood Townhouse Association

Dear Sir/Madam:

Enclosed herewith please find Articles of Incorporation with
regard to the above-referenced corporation that I would appreciate
you filing immediately upon receipt.  Also enclosed is our firm
check in the amount of $72.00 to cover the filing of same.  Please
call our offices as soon as the articles are filed so that they
may be picked up.

Thank you for your kind assistance in this matter.

Very truly yours,

Robert B. Brown

RBB:cjj
Enclosures

253071

COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION

RICHMOND, March 2, 1984

$72.00

RECEIVED OF

Robert B. Brown
3000 Idlewood Avenue
P.O. Box 7268
Richmond, VA. 23221

For:  KNOLLINGWOOD TOWNHOUSE ASSOCIATION    on account of fees for incorporation:

Filing Fee, $10.00

Charter Fee, $50.00

Recording Fee, $12.00

The certificate of incorporation was issued and admitted to record  in this office on the above date.

Respectfully,

*William C. Young*

Clerk of the Commission

CLK019

*16434-A*

1332

## DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR KNOLLINGWOOD TOWNHOUSE ASSOCIATION.

THIS DECLARATION, made on the date hereinafter set forth by Knollingwood Properties, Inc., hereinafter referred to as "Declarant".

W I T N E S S E T H :

WHEREAS, Declarant is the owner of certain property in the County of Henrico, State of Virginia, which is more particularly described and set forth on SCHEDULE A hereof, attached hereto and by this reference made a part hereof.

NOW, THEREFORE, Declarant hereby declares that all of the properties described above shall be held, sold and conveyed subject to the following easements, restrictions, covenants and conditions, which are for the purpose of protecting the value and desirability of, and which shall run with, the real property, and be binding on all parties having any right, title or interest in the described properties or any part thereof, their heirs, successors and assigns, and shall inure to the benefit of each owner thereof.

### ARTICLE I
#### Definitions

SECITON 1.  "Association" shall mean and refer to Knollingwood Townhouse Association, to be organized by the Declarant prior to the sale of the first Lot, its successors and assigns.

SECTION 2.  "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of a fee simple title to any Lot which is a part of the Properties (defined in Section 3), including contract sellers, but excluding those having such interest merely as security for the performance of an obligation.

SECTION 3.  "Properties" shall mean and refer to that certain real property hereinbefore described, and such additions thereto as may hereafter be brought within the jurisdiction of the Association.

SECTION 4.  "Common Area" shall mean all real property owned by the Association for the common use and enjoyment of the owners.  The Common Area to be owned by the Association at the time of the conveyance of the first Lot is more particularly described on SCHEDULE B hereof attached hereto and made a part hereof.

SECTION 5.  "Dedicated Area" shall mean all the area within the properties dedicated to any public agency, authority or utility prior to 1, September, 1983, or which may thereafter be so dedicated as hereinafter provided.

SECTION 6.  "Lot" shall mean and refer to any plot of land shown upon any record subdivision map of the Properties with the exception of the Common Area.

SECTION 7.  "Declarant" shall mean and refer to Knollingwood Properties, Inc., and any other developer to whom lots may be sold for development purposes out of the properties.

### ARTICLE II
#### Annexation of Additional Properties

SECTION 1.  The restrictions as contained herein, as well as all of the rules, regulations and controls herein provided may be applied to such future land as may be platted by the Declarant, or its assigns, so long as any such future land is either contiguous to the real property described in SCHEDULE A hereof, or contiguous to any addition to such property made hereunder, and the application of these restrictions to said adjoining land

EXHIBIT C

shall commence upon the platting of said adjoining lands of this subdivision, and at the sole election of Declarant, or its assigns, but these restrictions and covenants and controls shall not apply to such land as the Declarant shall hereinafter designate to be excluded from these restrictions.

SECTION 2.  Notwithstanding the provisions of Article II Section 1, any property not contiguous to the "Properties" as aforesaid, or not adjoining thereto may be annexed as a part of this subdivision and subject to the covenants and regulations and rules herein, but the annexation of such additonal property shall require the consent of two-thirds (2/3) of the total votes of the Class A members and the Class B members, if any, at a meeting duly called for this purpose, written notice having been given not less than thirty (30) days, nor more than sixty (60) days in advance of the meeting setting forth the purpose of the meeting. The presence of members or of proxies entitled to cast sixty percent (60%) of the votes of each class of membership shall constitute a quorum.  If the required quorum is not forthcoming at any meeting, another meeting may be called subject to the notice requirement set forth above and the required quorum at such subsequent meeting shall be thirty percent (30%) of the Class A membership and sixty percent (60%) of the Class B membership.  If the required quorum is not forthcoming at any such meeting, another meeting may be called, subject to the notice requirement set forth above, and the required quorum, at any such subsequent meeting shall be one-half (1/2) of the required quorum at the proceeding meeting.  No such subsequent meeting shall be held more than sixty (60) days from the preceding meeting.

## ARTICLE III
## Property Rights

SECTION 1.  Owner's Easements of Enjoyment.  Every Owner shall have a right and easement of enjoyment in and to the Common Area which shall be appurtenant to and shall pass with the title to every Lot, subject to the following provisions:

(a)  The right of the Association to dedicate or transfer all or any part of the Common Area to any public agency, authority, or utility for such purposes and subject to such conditions as may be agreed to by the members.  No such dedication or transfer shall be effective unless an instrument signed by members entitled to cast two-thirds (2/3) of the total votes of the Class A membership and the Class B membership, if any, has been recorded, agreeing to such dedication or transfer, and unless written notice of the proposed action is sent to every member not less than ten (10) days nor more than sixty (60) days in advance of any meeting where such vote is taken;

(b)  The right of the Association to limit the number of guests of members with respect to the use of the Common Area;

(c)  The right of the Association, in accordance with its Articles and By-Laws, to borrow money for the purpose of improving the Common Area and the facilities and in aid thereof to mortgage said property and the rights of such mortgagee in said properties shall be subordinate to the rights of the homeowners hereunder;

(d)  The right of the individual owners to the exclusive use of parking spaces as provided in this Article.

SECTION 2.  Delegation of Use.  Any Owner may delegate, in accordance with the By-Laws, his right of enjoyment to the Common Area to the members of his family his tenants, or contract purchasers who reside on the property.

SECTION 3.  Parking Rights.  Ownership of each Lot shall entitle the owner or owners thereof to the use of not more than two (2) automobile parking spaces, which shall be as near and convenient to said Lot as reasonably possible, together with the right of ingress and egress in and upon said parking areas.

ARTICLE IV
Membership

SECTION 1.  Every person or entity who is a record owner of a fee or undivided fee interest in any Lot which is subject by covenants of record to assessment by the Association, including contract sellers, shall be a member of the Association.  The foregoing is not intended to include persons or entities who hold an interest merely as security for the performance of an obligation.  No Owner shall have more than one memership. Membership shall be appurtenant to and may not be separated from ownership of any Lot which is subject to assessment by the Association.  Ownership of such Lot shall be the sole qualification for membership.

SECTION 2.  The Association shall have two classes of voting membership:

Class A.  Class A members shall be all Owners with the exception of the Declarant and shall be entitled to one vote for each Lot owned.  When more than one person holds an interest in any Lot, all such persons shall be members.  The vote for such Lot shall be exercised as they among themselves determine, but in no event shall more than one vote be cast with respect to any Lot.

Class B.  The Class B member shall be the Declarant and shall be entitled to one vote, plus two votes for each Class A member.  The Class B membership shall cease on the happening of either of the following events, whichever occurs earlier:

(a)  When the total votes outstanding in the Class A membership equal ninety-five (95); or

(b)  When the Delcarant shall notify the Association in writing that it terminates and releases any interest it may have in the Class B membership.

ARTICLE V
Covenants For Maintenance Assessments

SECTION 1.  Creation of the Lien and Personal Obligation of Assessments.  The Declarant, for each Lot owned within the Properties, hereby covenants, and each Owner of any Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association; (1) annual assessments or charges, and (2) special assessments for capital improvements, such assessments to be fixed, established and collected as hereinafter provided. The annual and special assessment, together with interest, costs and reasonable attorneys' fees incurred in collection, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made in the manner hereinafter provided and subject to prior liens on the property as hereinafter provided.  Each such assessment, together with interest, costs,  and reasonable attorneys' fees, shall also be the personal obligation of the person who was the Owner of such property at the time when the assessment was made.  Such personal obligation for delinquent assessments shall not pass to such Owner's successors in title unless expressly assumed by them.

SECTION 2.  Purpose of Assessments.  The assessments levied by the Association shall be used exclusively for the purpose of promoting the recreation, health, safety, and welfare of the residents in the Properties and in particular for the improvement and maintenance of the Properties, services, and facilities devoted to this purpose and related to the use and enjoyment of the Common Area, and of the homes situated upon the Properties.

The  Association  shall use such assessments and levies  for the general purposes stated above, and in addition, thereto shall be required to maintain and operate the following:

(a)  The Association shall provide exterior maintenance

on all Lots and Common Areas, including, but not limited to, paint, repair and replacement and care of roof, exterior building surfaces, trees, shrubs, grass, walks, the water connections from the townhouses to the water meters, the sewer connections from the townhouses to the county main, and all other exterior improvements, repairs and replacements that the Board of Directors of the Association may from time to time deem advisable, with the exception that the Association shall not maintain and replace glass surfaces and broken window glass in individual living units, unless in its discretion, the Board of Directors deems such maintenance and replacement advisable.

In the event that any such need for maintenance or repair is caused by the willful or negligent act of any owner, his family, or guests, or invitees, the cost of such maintenance or repairs shall become the personal obligation of such Owner and be added to and become a part of the aforementioned assessment to which such Owener's Lot is subject.

(b)  The Association shall maintain all open and Common Areas, as well as all parking areas.  The Association shall maintain a service for the collection of garbage, trash, shall provide snow removal and grass cutting for the Common Areas, as well as for the individual Lots and shall provide street lighting where not provided by public authorities.

(c)  Any assessments, charges and costs of the maintenance of the Common Area shall constitute a pro rata lien upon the individual lots or units, inferior in lien and dignity only to taxes and bona fide duly recorded first deeds of trust on each lot or unit.

(d)  For the purpose solely of performing the exterior maintenance required by this Article, the Association, through its duly authorized agents or employees shall have the right after reasonal notice to the Owner, to enter upon any Lot or exterior of any Living Unit at reasonable hours of any day except Sunday.  Nothing herein shall prevent emergency maintenance at any time.

SECTION 3.  Basis and Maximum of Annual Assessments.  Until January 1 of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment shall be Fifteen and 00/100 Dollars ($15.00) per month per improved Lot (improved by complete structure) and shall be a maximum of Two Dollars ($2.00) per month per inimproved Lot.

(a)  From and after January 1 of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment may be increased up to ten percent (10%) per year effective January 1 of each year without a vote of membership, by the Board of Direcotrs of the Association, which Board may fix such annual increase up to the maximum of ten percent (10%) after due consideration of current maintenance costs and needs of the Association.

(b)  Any increase requested by the Board of Directors in the usual monthly assessments above the annual ten percent (10%) increase must be approved ty a two-thirds (2/3) vote of each of Class A and B and for this purpose a quorum shall be constituted by a majority of the total votes authorized in this subsection.

(c)  The Board of Direcotrs may fix the annual assessment at an amount not in excess of the then authorized maximum.

SECTION 4.  Special Assessments for Capital Improvements. In addition to the annual assessments authorized above, the Association may levy in any assessment year, a special assessment applicable to that year only, for the purpose of defraying, in whole or in part, the cost of any construction or reconstruction, unexpected repair or replacement of a capital improvement upon the Common Area, including the necessary fixtures and personal property related thereto provided that any such assessment must be approved by a two-thirds (2/3) vote of each Class A and B, and for this purpose a quorum shall be construed by a majority of the total votes authorized by this subsection, said vote to be taken in person or by proxy at a meeting duly called for this

purpose, written notice for such meeting having been given not
less than ten (10) days or more than sixty (60) days in advance
of any meeting where such vote is taken.

SECTION 5.  Uniform Rate of Assessment.  Both annual and
special assessments must be fixed at a uniform rate for all
improved Lots as a class and all unimproved Lots as a class, and
may be collected on a monthly basis.

SECTION 6.  Date of Commencement of Annual Assessments; Due
Dates. The annual assessments provided for herein shall commence
as to all Lots on the first day of the month following the
conveyance of the Common Area, and thereafter on 1, January of
each calendar year.  The first annual assessment shall be adjusted
according to the number of months remaining in the calendar year.
The Board of Directors shall fix the amount of the annual
assessment against each Lot at least thirty (30) days in advance
of each annual assessment period.  Written notice of the annual
assessment shall be sent to every Owner subject thereto.  The
Board of Directors shall in its sole discretion be authorized to
increase or decrease such assessment, within the maximum limits
then applicable, by written noticed to every Owner subject
thereto.  Unless otherwise established by the Board of Directors,
the annual assessment shall be due in twelve (12) equal
installments on the first day of each month, unless other due
dates are established where sale is made between the annual 1,
January assessment dates.  The Association shall upon demand at
any time furnish a certificate in writing signed by an officer of
the Association setting forth whether the assessments on a
specified Lot have been paid.  A reasonable charge may be made by
the Board for the issuance of these certificates.  Such
certificate shall be conclusive evidence of payment of any
assessment therein stated to have been paid.  Assessment on Lots
increased by reason of the completion of a dwelling thereon
between the annual assessment dates shall be prorated.

SECTION 7.  Effect of Nonpayment of Assessments; Remedies of
the Association.  Any assessments which are not paid when due
shall be delinquent.  If the assessment is not paid within
thrity (30) days after the due date, the assessment shall bear
interest from the date of delinquency at the maximum contract
interest rate provided by law or ten percent (10%) per annum,
whichever is less.  The lien of the assessments provided for
herein whether or not notice has been placed of record as
hereinafter provided, may be foreclosed by a Bill in Equity in
the same manner as provided for the foreclosure of mortgages,
vendor's liens, and liens of similar nature.  A statement from
the Association showing the balance due on any assessment shall be
prima facie proof of the current assessment balance and
delinquency, if any, due on a particular Lot.  The Association
may bring an action at law against the Owner personally obligated
to pay the same, either in the first instance or for deficiency
following foreclosure, and interest, costs, and reasonable
attorneys' fees of any such action shall be added to the amount
of such assessment.  No owner may waive or otherwise escape
liability for the assessments provided for herein by nonuse of
the Common Area or abandonment of his Lot.

SECTION 8.  Lien for Payment of Assessments and Subordina-
tion of Lien to First and Second Mortgages.  There shall be a
continuing lien upon each of the individual Lots herein, in order
to secure the payment of any of the assessments provided under
this Declaration, but such lien shall be at all times subject and
subordinate to any first or second mortgages or deeds of trust
placed on the property at any time; except that, at such time as
the Association places to record a notice of deliquency as to any
particular Lot at such place as instruments of conveyance and
liens are recorded for such Lot on a form prescribed by the Board
of Directors, then, from time of recordation of said notice then
lien of such delinquent assessments in the amount stated in such
notice shall from that time become a lien prior to any first or
second mortgages or deeds of trust placed of record subsequent to

the date of said notice in the same manner as the lien of a
docketed judgment in the State of Virignia.  Sale or transfer of
any Lot shall not affect any lien provided for hereunder.
   SECTION 9.  Exempt Property.  The following property subject
to this Declaration shall be exempt from the assessments created
herein; (a) all Dedicated Property; and (b) the Common Area.
However, no land or improvements devoted to dwelling use shall be
exempt from said assessments.

ARTICLE VI
PARTY WALLS

1337

   SECTION 1.  General Rules of Law to Apply.  Each wall which
is built as a part of the original construction of the homes upon
the  properties and placed on the dividing line between the Lots
shall constitue a party wall, and, to the extent not inconsistent
with the provisions of this Article, the general rules of law
regarding party walls and liability for property damage due to
negligence or willful acts or omissions shall apply thereto.
   SECTION 2.  Sharing of Repair and Maintenance.  The cost of
reasonable repair and maintenance of a party wall shall be shared
by the Owners who make use of the wall in proportion to such use.
   SECTION 3.  Weatherproofing.  Notwithstanding any other
provision of this Article, an Owner who by his negligent or
willful act causes the party wall to be exposed to the elements
shall bear the whole cost of furnishing the necessary protection
against such elements.
   SECTION 4.  Right to Contribution Runs With Land.  The right
of any Owner to contribution from any other Owner under this
Article shall be appurtenant to the land and shall pass to such
Owner's successors in title, but the burden on such other Owner
shall be personal to him and the obligee owner may perfect any
such claim against subsequent purchasers by written notice duly
recorded, as provided in Section 8 of Article V.
   SECTION 6.  Arbitration.  In the event of any dispute
arising concerning a party wall, or under the provisions of this
Article, each party shall choose one arbitrator, and such
arbitrators shall choose one additional arbitrator, and the
decision shall be by a majority of all the arbitrators.  If the
parties to the dispute so agree, the Board of Directors of the
Association may choose a single arbitrator whose decision alone
shall be binding.

ARTICLE VII
ARCHITECTURAL CONTROL

   No building, fence, wall or other structure shall be
commenced, erected or maintained upon the Properties, nor shall
any exterior addition to or change or alteration therein be made
until the plans and specifications showing the nature, kind,
shape, height, materials, and location of the same shall have
been submitted to and approved in writing as to harmony of
external design and location in relation to surrounding
structures and topography by the Board of Directors of the
Association, or by an architectural committee composed of three
(3) or more representatives appointed by the Board.  In the event
said Board, or its designated committee, fails to approve or
disapprove such design and location within thirty (30) days after
said plans and specifications have been submitted to it, approval
will not be required and this Article will be deemed to have been
fully complied with.

ARTICLE VIII
USE RESTRICTIONS

   SECTION 1.  Limitation on Use of Lots and Common Area.  The
Lots and Common Area shall be occupied and used as follows:

(a)  No Owner shall occupy or use his Lot, or permit the same or any part thereof to be occupied or used, for any purpose other than as a private single-family residence for the Owner and the Owner's family or the Owner's lessees or guests.

(b) There shall be no obstruction of the Common Area. Nothing shall be stored in the Common Area without the prior consent of the Association.

(c)  Nothing shall be done or kept in any Lot or in the Common Area which will increase the rate of insurance on the Common Area, without the prior written consent of the Association.  No Owner shall permit anything to be done or kept in his Lot or in the Common Area which will result in the cancellation of insurance on any Lot or any part of the Common Area, or which would be in violation of any Law.  No waste will be committed in the Common Area.

(d)  No sign of any kind shall be displayed to the public view on or from any Lot or the Common Area, without the prior consent of the Association.

(e)  No animals, livestock or poultry of any kind shall be raised, bred, or kept in any Lot or in the Common Area, except that dogs, cats, or other household pets may be kept in Lots, subject to the rules and regulations adopted by the Association.

(f)  No noxious or offensive activity shall be carried on in any Lot or in the Common Area, nor shall anything be done therein which may be or become an annoyance or nuisance to the other Owners.

(g)  Nothing shall be altered or constructed in or removed from the Common Area, except upon the written consent of the Association.

(h)  there shall be no violation of rules for the use of the Common Area adopted by the Association and furnished in writing to the Owners and the Association is authorized to adopt such rules.

(i)  All trash and garbage cans shall be concealed and the method of concealment is to be one approved by the Association.

SECTION 2.  Entry for Repairs.  The Association or its agents may enter any Lot or residence thereon when necessary in connection with any maintenance, landscaping or construction for which the Association is responsible.  Such entry shall be made with as little inconvenience to the Owners as practicable, and any damage caused thereby shall be repaired by the Association out of the common expense fund.


ARTICLE IX
INSURANCE

SECTION 1. The Association for the benefit of each Owner, shall, as a common expense (to be assessed to the Owners) obtain and maintain at all times, in single or concurrent policies, insurance against:

(a)  Loss by fire, with endorsement for extended coverage and additional extended coverage with not greater than $250.00 deductible for the full insurable replacement value (to be determined by a qualified appraiser appointed from time to time by the Association for such purpose) of all improvements to Lots and Common Area or such other fire and casualty insurance as the Association or its delegate, shall determine give substantially equal or greater protection to the Owners.

(b)  Any liability on the part of the Association, its delegate and each of the Owners against any liability to the public or to any Owner, their invitees or tenants, incident to the ownership and/or use of any Lot and/or the Common Area, and including the personal liability exposure of the Owners, with limites of liability of not less than One Million Dollars ($1,000,000.00) for any person injured, for any one accident, and not less than Two Hundred Fifty Thousand Dollars ($250,000.00) for property damage for each occurrence (such limits and

coverage to be reviewed at least annually by the Association and increased in its discretion) which said policy or policies shall be issued on a comprehensive liability basis and shall provide that the policy or policies shall not be prejudiced as a result of his, her, its or their action against another named insured.

SECTION 2. An Insurance Trustee may be designated from time to time by the Board of Directors. The Board of Directors shall pay the fees and disbursements of any Insurance Trustee and such fees and disbursements shall constitute a common expense of the project. Except as hereinafter provided, the Insurance Trustee shall receive and hold the amount payable under any of such policy or policies of casualty insurance and apply the same to the cost of reconstruction or repair of any damaged or destroyed Property and the Owner of such Lot shall be obligated to commence within sixty (60) days from the date of such damage or destruction, the work of rconstructing or repairing such house according to substantially the same plans, specifications, design and total cubic area pursuant to which such house was originally constructed, subject to the prior written approval of the Board of Directors. The Insurance Trustee shall apply, make available and pay the amount received by it under such policy or policies to such Owner for such reconstruction and repair, payment thereof to be made as the work progresses at such times, and upon compliance by such Owner with such conditions as the Insurance Trustee shall impose in order to assure full restoration or repair of the damaged portions of such house in a workmanlike manner, free and clear of any mechanic's liens and any encumbrances, liens, claims or charges. If the cost of such reconstruction or repair shall exceed the amount paid to the Insurance Trustee under the policy or policies as aforesiad, such excess shall be paid by the Owner, and any proceeds of insurance in excess of the cost of such reconstruction and repair shall be the sole property of the Association.

## ARTICLE X
## EASEMENTS

SECTION 1. Adjoining Areas. Each Owner is hereby declared to have an easement and the same is hereby granted by the Declarant over all adjoining Lots or Common Areas for the purpose of accomodating any encroachment due to engineering errors, errors in original construction, settlement or shifting of the building, or any other similar cause. There shall be valid easements for the maintenance of said encroachment, settlement or shifting; provided however, that in no event shall a valid easement for encroachment be created in favor of an Owner or Owners if said encroachment occurred due to the willful misconduct of said Owner or Owners. In the event a structure on any Lot is partially or totally destroyed, and then repaired or rebuilt, the Owners of each Lot agree that minor encroachment over adjoining Lots shall be permitted and that there shall be valid easements for the maintenance of said encroachments so long as they shall exist.

SECTION 2. Overhanging Roofs and Eaves. Each Lot and its Owner within the Properties is hereby ydeclared to have an easement and the same is hereby granted by the Declarant, over each adjoining Lot and/or the Common Areas, as the case may be, for overhanging roofs and eaves and the maintenance thereof.

SECTION 3. Duties of the Association. There is hereby reserved to the Association such easements as are necessary to perform the duties and obligations of the Association as are hereinabove set forth in Article VIII hereof.

SECTION 4. Priority of Easements. Each of the easements hereinabove referred to shall be deemed to be established upon the recordation of this Declaration and shall henceforth be deemed to be covenants running with the land for the use and benefit of the Lots, and the Common Properties, as the case may be, superior to all other encumbrances which may hereafter be

applied against or in favor of the Properties or any portion hereof.

### ARTICLE XI
### GENERAL PROVISIONS

SECTION 1.  Enforcement.  The Association, or any Owner, 1340 shall have the right to enforce by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereafter imposed by the provisions of this Declaration.  Failure by the Association or by any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.

SECTION 2.  Severability.  Invalidation of any one of these covenants or restrictions by judgment or court order shall in no wise affect any other provisions which shall remain in full force and effect.

SECTION 3.  Amendment.  The covenants and restrictions of this Declaration shall run with and bind the land and shall inure to the benefit of and be enforceable by the Association, or the Owner of any Lot subject to this Declaration, their respective legal representatives, heirs, successors, and assigns, for a term of twenty (20) years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for five (5) successive periods of ten (10) years each.  The covenants and restrictions of this Declaration may be amended during the first twenty (20) year period by an instrument signed by not less than ninety percent (90%) of the Lot Owners, and thereafter by an instrument signed by not less than seventy-five percent (75%) of the Lot Owners (Lot Owners for the purposes of this paragraph shall include the Declarant).  Any amendment must be properly recorded.

WITNESS the following signature and seal made this 22nd day of September, 1983.

KNOLLINGWOOD PROPERTIES, INC.

By _____ (SEAL)
John S. Napier, President

Approved as to substance and form.

_____
Ass't County attorney
8/30/83

State of Virginia
City of Richmond

The foregoing instrument was acknowledged on the ___ day of September by John S. Napier.

Teresa K. Sutton
Notary Public

My Commission Expires 12-5-83

**From:** Thomas Hodges <thodges@shawverperez.com>
**Date:** March 1, 2016 at 4:28:03 PM EST
**To:** don damron <tigershb83@yahoo.com>
**Subject:** Re: Knollingwood Townhouse Assoc. v. Damron

Payment received. See attached continuance letter I faxed to court. You do not need to appear tomorrow.

Unfortunately, I miscalculated the total amount due by $201.00. My apologies. I propose we add a seventh payment in August for $201.00.

Thanks,

Thomas B. Hodges Jr.
Shawver Perez PLLC
4870 Sadler Road
Suite 300
Glen Allen, VA 23060
P: (866) 812-1889
F: (866) 849-0544
thodges@shawverperez.com

**Shawver Perez PLLC is a law firm and debt collector and this is an attempt to collect a debt.**

NOTICE OF CONFIDENTIALITY: This e-mail and its attachments, if any, are for the exclusive and confidential use of the intended recipient and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. The contents of this e-mail are confidential and subject to the attorney-client and work product privileges. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Please virus check all attachments to prevent widespread contamination and corruption of files and operating systems.

This communication does not reflect an intention by the sender or the sender's client or principal to conduct a transaction or make any agreement by electronic means. Nothing contained in this message or in any attachment shall satisfy the requirements for a writing, and nothing contained herein shall constitute a contract or electronic signature under the Electronic Signatures in Global and National Commerce Act, any version of the Uniform Electronic Transactions Act or any other statute governing electronic transactions.



EXHIBIT D

On Tue, Mar 1, 2016 at 3:26 PM, don damron <tigershb83@yahoo.com> wrote:

Yes, you should have received the first check yesterday

-----------------------------------------------

On Mon, 2/29/16, Thomas Hodges <thodges@shawverperez.com> wrote:

Subject: Re: Knollingwood Townhouse Assoc. v. Damron
To: "Don Damron" <tigershb83@yahoo.com>
Date: Monday, February 29, 2016, 3:09 PM

Mr.
Damron,
Please advise
whether you agree to the payment plan as outlined.  If so,
I will continue the trial so that we don't need to
appear.
Thanks,

Thomas B. Hodges Jr.Shawver Perez
PLLC4870 Sadler RoadSuite
300Glen Allen, VA 23060P: (866)
812-1889F: (866) 849-0544thodges@shawverperez.com
 Shawver Perez PLLC is a law
firm and debt collector and  this is an attempt to collect a
debt.
NOTICE OF
CONFIDENTIALITY: This e-mail and its attachments, if any,
are for the exclusive
and confidential use of the intended recipient and may contain confidential and
privileged information.
Any unauthorized review, use, disclosure or distribution is
prohibited. The
contents of this e-mail are confidential and subject to the
attorney-client and
work product privileges. If you are not the intended
recipient, please contact
the sender by reply e-mail and destroy all copies of the
original message.
Please virus check all attachments to prevent widespread
contamination and
corruption of files and operating systems.

This communication does not
reflect an intention by the sender or the sender's

client or principal to
conduct a transaction or make any agreement by electronic
means. Nothing
contained in this message or in any attachment shall satisfy
the requirements
for a writing, and nothing contained herein shall constitute
a contract or
electronic signature under the Electronic Signatures in
Global and National
Commerce Act, any version of the Uniform Electronic
Transactions Act or any
other statute governing electronic
transactions.

On Wed, Feb 24, 2016 at
9:27 AM, Thomas Hodges <thodges@shawverperez.com>
wrote:
The board approved your offer of six monthly
payments of $298.27 to settle the warrant in debt.
Payments will be due by the last business day of each month,
with the first payment due by Feb. 29, 2016.  Make your
checks payable to Shawver Perez PLLC and mail to 4870 Sadler
Rd, Suite 300, Glen Allen VA 23060.
You can pay your current 2016
monthly assessment of $201.00 directly to Community Group
with no further collection fees.
Thomas B.
Hodges Jr.Shawver Perez PLLC4870
Sadler RoadSuite 300Glen Allen, VA
23060P: (866)
812-1889F: (866) 849-0544thodges@shawverperez.com
 Shawver Perez PLLC is a law
firm and debt collector and  this is an attempt to collect a
debt.
NOTICE OF
CONFIDENTIALITY: This e-mail and its attachments, if any,
are for the exclusive
and confidential use of the intended recipient and may contain confidential and
privileged information.
Any unauthorized review, use, disclosure or distribution is
prohibited. The

contents of this e-mail are confidential and subject to the
attorney-client and
work product privileges. If you are not the intended
recipient, please contact
the sender by reply e-mail and destroy all copies of the
original message.
Please virus check all attachments to prevent widespread
contamination and
corruption of files and operating systems.

This communication does not
reflect an intention by the sender or the sender's
client or principal to
conduct a transaction or make any agreement by electronic
means. Nothing
contained in this message or in any attachment shall satisfy
the requirements
for a writing, and nothing contained herein shall constitute
a contract or
electronic signature under the Electronic Signatures in
Global and National
Commerce Act, any version of the Uniform Electronic
Transactions Act or any
other statute governing electronic
transactions.

On Tue, Feb 23, 2016 at
3:19 PM, Don Damron <tigershb83@yahoo.com>
wrote:
Yes

Sent from my
iPhone
On Feb 23, 2016,
at 1:24 PM, Thomas Hodges <thodges@shawverperez.com>
wrote:

I will have to check with
the association.  Can you pay your 2016
concurrently?
Thomas B. Hodges

Jr.Shawver Perez PLLC4870 Sadler
RoadSuite 300Glen Allen, VA
23060P: (866)
812-1889F: (866) 849-0544thodges@shawverperez.com
 Shawver Perez PLLC is a law
firm and debt collector and  this is an attempt to collect a
debt.
NOTICE OF
CONFIDENTIALITY: This e-mail and its attachments, if any,
are for the exclusive
and confidential use of the intended recipient and may contain confidential and
privileged information.
Any unauthorized review, use, disclosure or distribution is
prohibited. The
contents of this e-mail are confidential and subject to the
attorney-client and
work product privileges. If you are not the intended
recipient, please contact
the sender by reply e-mail and destroy all copies of the
original message.
Please virus check all attachments to prevent widespread
contamination and
corruption of files and operating systems.

This communication does not
reflect an intention by the sender or the sender's
client or principal to
conduct a transaction or make any agreement by electronic
means. Nothing
contained in this message or in any attachment shall satisfy
the requirements
for a writing, and nothing contained herein shall constitute
a contract or
electronic signature under the Electronic Signatures in
Global and National
Commerce Act, any version of the Uniform Electronic
Transactions Act or any
other statute governing electronic
transactions.

On

Tue, Feb 23, 2016 at 10:37 AM, Don Damron <tigershb83@yahoo.com>
wrote:
Can
we do 6 months at $298.27?

Sent from my iPhone
On Feb 23, 2016, at 8:56 AM, Thomas Hodges
<thodges@shawverperez.com>
wrote:

I can waive 6 of the
late fees:  $301.50.  I can also waive the $50 attorney
fee.  That brings your balance to $1,789.60.  Can you pay
that over three months?  $500, $500, $789.60?

Thomas B. Hodges
Jr.Shawver Perez PLLC4870 Sadler
RoadSuite 300Glen Allen, VA
23060P: (866)
812-1889F: (866) 849-0544thodges@shawverperez.com
 Shawver Perez PLLC is a law
firm and debt collector and  this is an attempt to collect a
debt.
NOTICE OF
CONFIDENTIALITY: This e-mail and its attachments, if any,
are for the exclusive
and confidential use of the intended recipient and may contain confidential and
privileged information.
Any unauthorized review, use, disclosure or distribution is
prohibited. The
contents of this e-mail are confidential and subject to the
attorney-client and
work product privileges. If you are not the intended
recipient, please contact
the sender by reply e-mail and destroy all copies of the
original message.
Please virus check all attachments to prevent widespread
contamination and
corruption of files and operating systems.

This communication does not
reflect an intention by the sender or the sender's
client or principal to
conduct a transaction or make any agreement by electronic
means. Nothing

contained in this message or in any attachment shall satisfy
the requirements
for a writing, and nothing contained herein shall constitute
a contract or
electronic signature under the Electronic Signatures in
Global and National
Commerce Act, any version of the Uniform Electronic
Transactions Act or any
other statute governing electronic
transactions.


On
Mon, Feb 22, 2016 at 3:33 PM, don damron <tigershb83@yahoo.com>
wrote:
Hey
Thomas,


The landscaping has finally been done. I would like to set
up a payment plan minus late fees charged by the collection
agency. Let me know what can be done.


Thanks


Don A. Damron

------------------------------------------------

On Mon, 11/23/15, Thomas Hodges <thodges@shawverperez.com>
wrote:


Subject: Knollingwood Townhouse Assoc. v. Damron

To: TigersHB83@yahoo.com

Date: Monday, November 23, 2015, 11:20 AM

Mr.

Damron,

I received your fax disputing the validity of the

debt.  See attached account statement showing all of the

charges and credits on your account.

Thomas B. Hodges Jr.Shawver Perez

PLLC4870 Sadler RoadSuite

300Glen Allen, VA 23060P: (866)

812-1889F: (866) 849-0544thodges@shawverperez.com

 Shawver

Perez PLLC is a law firm and debt collector and  this is an

attempt to collect a debt.

NOTICE OF

CONFIDENTIALITY: This e-mail and its attachments, if any,

are for the exclusive

and confidential use of the intended recipient and may contain confidential and

privileged information.

 Any unauthorized review, use, disclosure or distribution is

prohibited. The

contents of this e-mail are confidential and subject to the

attorney-client and

work product privileges. If you are not the intended

recipient, please contact

the sender by reply e-mail and destroy all copies of the

original message.

Please virus check all attachments to prevent widespread

contamination and

corruption of files and operating systems.


This communication does not

reflect an intention by the sender or the sender's

client or principal to

conduct a transaction or make any agreement by electronic

means. Nothing

contained in this message or in any attachment shall satisfy

the requirements

for a writing, and nothing contained herein shall constitute

a contract or

electronic signature under the Electronic Signatures in

Global and National

Commerce Act, any version of the Uniform Electronic

Transactions Act or any

other statute governing electronic

transactions.

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made by and between Knollingwood Townhouse Association, Inc. ("Association") and Don Damron ("Damron") (the "Parties").

WHEREAS, the Association has sued Damron in Henrico General District Court, Case No. GV15024479-00 (the "Lawsuit") for failure to timely pay assessments and fees due to the Association for real property commonly known as 1900 Airy Circle, Richmond VA 23238 through the end of the year 2015;

WHEREAS, partial payments totaling $2,094.35 have already been paid by Damron to the Association;

WHEREAS, the Association and Damron desire to settle, resolve and dispose of any and all of the claims that have been, or could have been, asserted in the Lawsuit in order to avoid expensive, time-consuming and uncertain litigation;

WHEREAS, the terms of this Agreement represent the compromise of disputed claims and do not in any way signify that there was wrongdoing on any party's part; and

NOW, THEREFORE, in consideration of the foregoing, and in consideration of the covenants contained herein, the Association and Damron agree as follows:

1.    The previous payment of $402.00 which was to be applied to 2016 assessments under a previous agreement will now be applied to 2015 assessments included in the Lawsuit.

2.    The Association hereby releases and forever discharges Damron, from all claims, actions, causes of action and suits of every kind, arising from, pertaining to or relating to the Lawsuit as of the date of this Agreement upon receipt and sufficiency of one payment of $298.27 (the "Payment") as consideration of this Agreement.

EXHIBIT E

2.    The Payment shall be made payable to "HLE Law Group" and sent to:

Thomas B. Hodges Jr.
HLE Law Group PLLC
4870 Sadler Rd., Suite 300
Glen Allen VA 23060
File No. 1527650

3.    This Agreement may be signed in counterparts and facsimile signatures will be

deemed originals.

Dated: _____9/15_____, 2016          Don Damron

Dated: _____9/15_____, 2016

Knollingwood Townhouse Association

By: _____

Its: _____

4870 Sadler Road, Suite 300
Glen Allen, VA 23060



p 888.221.0806 | f 888.325.2126
thodges@hlelawgroup.com

September 15, 2016

Civil Clerk
Henrico General District Court
PO Box 90775
4301 E. Parham Road
Henrico VA 23273

RE:    **Knollingwood Townhouse Association v. Damron**
**Case No. GV15024479-00**
**Return date: 9/16/2016 at 10:00 AM**
**Our file no.: 1527650**

Dear Sir/Madam:

Please dismiss the above-styled case with prejudice. The parties have settled the claim.

Thank you for your prompt attention to this matter. Please do not hesitate to contact me with any questions or concerns.

Sincerely,

Thomas B. Hodges Jr.

cc:    Don Damron

**This is correspondence from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.**

EXHIBIT F

Dun VA
Ourfile: 3831;

September 26, 2016



**EQUITY EXPERTS**
ASSOCIATION COLLECTION SPECIALISTS

2391 Pontiac Rd. – Auburn Hills, MI 48326
(248) 601-6766 (855) 321-3973   info@equityexperts.org

Don Damron
4435 Waterfront Dr, Ste 400
Glen Allen, VA 23060

### *EQUITYEXPERTS.ORG, LLC IS A DEBT COLLECTOR.  THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

Dear Don Damron:

KNOLLINGWOOD TOWNHOUSE ASSOCIATION, INC. (the "Association") has transferred your account to EquityExperts.org, LLC to collect a debt that they claim you owe.  KNOLLINGWOOD TOWNHOUSE ASSOCIATION, INC. is the original creditor of this debt.  This debt arose out of your membership in the association and your ownership of property located at 1900 Airy Circle.   The Association reports that you have not paid your share of the Association's assessments and your total unpaid balance is $2485.23.

Your account is severely delinquent.   Your balance includes any unpaid installments for this year's Association assessments that are due through the date of this letter.  Your balance may also include special assessments, interest, fees and/or fines charged by the Association, and any attorney's fees and collection costs incurred by the Association to collect the debt.  Your balance may also include amounts owed for prior years' assessments and costs, that may be secured by a prior legal judgment, if any have been obtained against you.  Please be advised that, until the balance is paid in full, new association assessments or special assessments, late fees and the costs of collection may continue to be added each month and the amount of your debt may continue to increase.

- *Unless you dispute the validity of the debt, or any part of the debt, within 30 days after you receive this notice, Equityexperts.org, LLC will assume that the debt is valid.*

- *If you notify us in writing within the thirty-day period that you dispute the debt, or any part of the debt, we will obtain verification of the debt or a copy of the judgment against you, if any, and mail a copy of the verification and/or judgment to you.*

- *If you request the name of the original creditor in writing within the thirty-day period, we will provide the name and address of the original creditor, if different from the current creditor.*

Please contact us at (855) 321-3973 to discuss this important matter. You may make a payment by check or credit card.  For timely processing of your payment, it must be made out to *Equity Experts* and mailed to 2391 Pontiac Rd. Auburn Hills, MI 48326.  You may also call our office to pay by credit card.

Respectfully yours,
EquityExperts.org

**EXHIBIT G**

Ourfile: 3831;
Property: 1900 Airy Circle, Richmond, Va



**EQUITY EXPERTS**
ASSOCIATION COLLECTION SPECIALISTS

April 7, 2017

2391 Pontiac Rd. ◆ Auburn Hills, Michigan 48326
(248) 601-6766 ◆ (855) 321-3973 ◆info@equityexperts.org

Don Damron
4435 Waterfront Dr, Ste 400
Glen Allen, VA 23060

Dear Don Damron:

EquityExperts.org, LLC is a debt collector. We are attempting to collect a debt on behalf of Knollingwood Townhouse Association, Inc. (the "Association"). The debt arises from your ownership of property located in the Aassociation located at 1900 Airy Circle, Richmond, Va.

In our previous letter, we advised that if you did not pay the debt or agree to an approved payment plan within seven (7) days, we would escalate our collection activities, which would result in additional charges. Since we have not received your payment or your agreement to a payment plan, we have initiated our Post Outreach Lien Enforcement process and a $650.00 collection fee has been incurred by your association, and added to your account.

The balance due for this file is now $3,596.96. Equity Experts may have other accounts for this property relating to other year's unpaid assessments. You may receive separate notices from us regarding other accounts. Each account has a different "Ourfile Number" and a separate balance. This letter relates only to assessments, fees, and costs for years associated with the "Ourfile Number" listed above, through today's date.

We strongly urge you to call us at (855) 321-3973 to make arrangements to pay the debt. When you call, please refer to the Ourfile Number listed above.

For timely processing of your payment, your check must be made payable to *Equity Experts* and mailed to our address above. You may also call our office to pay by credit card.

Respectfully yours,

EquityExperts.org

*EQUITYEXPERTS.ORG, LLC IS A DEBT COLLECTOR. THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

EXHIBIT H

Knollingwood Townhouse Association, Inc.                                    March 12, 2018
c/o Community Group
3901 Westerre Parkway, Suite 100
Richmond, VA  23233

1) Certified Mail
2) Regular Mail

Don Damron
4435 Waterfront Dr, Ste 400
Glen Allen, VA  23060

Re:     1900 Airy Circle - Knollingwood Townhouse Association, Inc.
        2018 Association Fees

The Board of Directors of Knollingwood Townhouse Association, Inc. has requested that
Community Group, Inc., as Managing Agent, contact you concerning the 2018 assessment.
Currently, some or all your assessments prior to 2018 are in arrears and remain in
collections.

The 2018 annual assessment is $2412.00.  Please be advised that if your prior year's balance
is not paid in full by March 27, 2018: (a) the opportunity of paying the 2018 annual
assessment in installments will be removed, and (b) the accelerated assessment for 2018
will be added to the past due balance currently under collection with Equity Experts.  You
are encouraged to call Equity Experts at (855) 321-3973 to make payment arrangements to
pay off the amount under collection.

Please note that partial payments are welcomed and will be applied to the total balance
owed, but will not prevent the new assessments from being referred to the collection
agency.

Thank you for your cooperation.

Sincerely,

LaKeitha Phillips
Community Association Manager
On Behalf of the Board of Directors of Knollingwood Townhouse Association, Inc.

cc:  Equity Experts

EXHIBIT I

**VIRGINIA LAND RECORD COVER SHEET**
**FORM A – COVER SHEET CONTENT**

Instrument Date: _____ 7/11/2019 _____
Instrument Type: _____ MEML _____
Number of Parcels: _____ 1 _____   Number of Pages: _____ 1 _____
[ ] City [X] County
_____ HENRICO COUNTY COURT _____

TAX EXEMPT?         VIRGINIA/FEDERAL LAW
[ ] Grantor: ...........................................................
[ ] Grantee: ...........................................................
Consideration: ............ $3,700.78 ..................
Existing Debt: ................ $0.00 ....................
Actual Value/Assumed: ........ $0.00 ................

PRIOR INSTRUMENT UNDER § 58.1-803(D):
Original Principal: ............ $0.00 ................
Fair Market Value Increase: ........ $0.00 ............

Original Book Number: .......... Original Page Number: _____

Prior Recording At: [ ] City [X] County
_____ HENRICO _____         Percentage In This Jurisdiction: _____ 100%

BUSINESS / NAME
_1_  [ ] Grantor: DAMRON, DON
_____ [ ] Grantor: ...........................................................
_1_  [X] Grantee: KNOLLINGWOOD TOWNHOUSE ASSOCIATION, INC.
_____ [ ] Grantee: ...........................................................

GRANTEE ADDRESS
Name: KNOLLINGWOOD TOWNHOUSE ASSOCIATION, INC.
Address: 3901 WESTERRE PKWY. STE. 100
City: RICHMOND                          State: VA  Zip Code: 23223
Book Number: ..........  Page Number: ..........  Instrument Number: ..........
Parcel Identification Number (PIN): 734-749-5417  Tax Map Number: 734-749-5417
Short Property Description: UNIT TYPE 01 - 201.00

Current Property Address: 1900 AIRY CIRCLE
City: RICHMOND                          State: VA  Zip Code: 23238
Instrument Prepared By: JOHN R. GRIFFIN    Recording Paid By: EQUITY EXPERTS
Recording Returned To: EQUITY EXPERTS
Address: 2391 PONTIAC RD
City: AUBURN HILLS                       State: MI  Zip Code: 48326

---

RECORDED IN
COUNTY OF HENRICO, VA
HEIDI S. BARSHINGER
CLERK OF CIRCUIT COURT
FILED          Jul 18, 2019
AT             03:30 pm
BOOK           05872
START PAGE      1651
END PAGE        1653
INSTRUMENT #
   201900021035

SCG

*(Area Above Reserved For Deed Stamp Only)*

BK 5872 PG 1651

---

Copyright © 2014 Office of the Executive Secretary, Supreme Court of Virginia. All rights reserved.

EXHIBIT J

BK 5872 PG 1652

## MEMORANDUM OF LIEN FOR ASSOCIATION ASSESSMENTS

CLAIMANT:                  Knolling Wood Townhouse Association, Inc.
OWNER(S):                  Don Damron
PROPERTY DESCRIPTION:      KNOLLINGWOOD SC A BL X LT 1 68 B1 60
PROPERTY ADDRESS:          1900 Airy Circle, Richmond, VA 23238
TAX/PARCEL ID:             734-749-5417

Subject to the Declaration and By-laws recorded in the Clerk's Office of the Circuit Court for Henrico County, Virginia.

Amount of unpaid association dues and/or assessments and date when each fell due:

| 8/1/2018 | Assessment | $201.00 |
| 9/1/2018 | Assessment | $201.00 |
| 10/1/2018 | Assessment | $201.00 |
| 11/1/2018 | Assessment | $201.00 |
| 12/1/2018 | Assessment | $201.00 |
| 1/1/2019 | Assessment | $201.00 |
| 2/1/2019 | Assessment | $201.00 |
| 3/1/2019 | Assessment | $201.00 |
| 4/1/2019 | Assessment | $201.00 |
| 5/1/2019 | Assessment | $201.00 |
| 6/1/2019 | Assessment | $201.00 |
| 7/1/2019 | Assessment | $201.00 |
| | Lien Recording Costs | $22.00 |
| | Collection Costs | $1166.78 |
| | Attorney's Fee | $100.00 |
| | Total Claim | $3,700.78 |

Date of Issuance:07/11/2019

This lien includes a claim for reimbursement for unpaid assessments, late fees, collection costs and attorney's fees, together with interest at the maximum permissible rate for the sums secured by the lien from the time such sums became due and payable. The association is obtaining this lien in accordance with the provisions of the Virginia Property Owners' Association Act as set forth in Chapter 26 of Title 55 of the Virginia Code and the Association's recorded Covenants, Declarations and By-laws.

To make a payment or obtain a release of this lien, contact Equity Experts.org LLC, 2391 Pontiac Road, Auburn Hills, MI 48326; Toll Free: (855) 321-3973

Date: 07/11/2019

STEVEN PARKER, AUTHORIZED AGENT FOR THE PRESIDENT OF Knolling Wood Townhouse Association, Inc.

AFFIDAVIT                  )
STATE OF MICHIGAN          )
COUNTY OF OAKLAND          )

On this day July 11, 2019, STEVEN PARKER appeared before me, the undersigned Notary Public, and made oath that the information contained in the above Memorandum of Lien is true and correct to the best of his/her knowledge, information and belief. Subscribed and sworn to before me in the City/County and State aforesaid this July 11, 2019.

ERIN MICHELE FRYE
Notary Public, State of MICHIGAN, County of OAKLAND
My commission expires: 11/19/22

ERIN MICHELE FRYE
Notary Public, State of Michigan
County of Oakland
My Commission Expires Nov. 19, 2022
Acting in the County of  Oakland

Drafted by:                          Return to:
John R. Griffin, Esquire             Equityexperts.org, LLC
P.O. Box 1295                        2391 Pontiac Road
Culpeper, VA 22701                   Auburn Hills, MI 48326
571-308-5820                         (855) 321-3971 – File No. 3831

BK5872PG1653

## CLERK'S CERTIFICATE
DO NOT REMOVE FROM DOCUMENT

INSTRUMENT # 201900021035
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
JULY 18, 2019 AT 03:30PM

HEIDI S. BARSHINGER, CLERK
RECORDED BY: SCG

BK 5925 PG 0773

Tax/Parcel ID No.: 734-749-5417

## DEED OF APPOINTMENT OF TRUSTEE

Pursuant to the provisions of Title 55 of the Code of Virginia, and in execution of a lien for assessments in favor of Knolling Wood Townhouse Association, Inc. and against Don Damron dated 07/11/2019, and recorded with the Clerk of the Circuit Court for Henrico County, Virginia on 07/18/2019 at Deed Book / Page: 05872 / 1651, Instrument No.: 201900021035, Knolling Wood Townhouse Association, Inc. does hereby appoint Patriot Trustee Service, LLC, a Virginia Limited Liability Company, having its office at 12020 Sunrise Valle Drive, Suite 100, Reston, VA 20191, as Trustee, to sell the real property that is the subject of the above referenced lien.

Date:   11/12/2019

Brittany Kelley,
Authorized Agent for the President of
Knolling Wood Townhouse Association, Inc.

AFFIDAVIT                           )
STATE OF MICHIGAN          )
COUNTY OF OAKLAND      )

Subscribed, sworn to and acknowledged before me by BRITTANY KELLEY on November 12, 2019.

ERIN MICHELE FRYE
Notary Public, State of Michigan
County of Oakland
My Commission Expires Nov. 19, 2022
Acting in the County of _____

ERIN MICHELE FRYE
Notary Public, State of MICHIGAN, County of OAKLAND
My commission expires: 11/19/22

Drafted by:                              Return to:
John R. Griffin, Esquire           Equityexperts.org, LLC
P.O. Box 1295                          2391 Pontiac Road
Culpeper, VA 22701               Auburn Hills, MI 48326
571-308-5820                          (855) 321-3971 – File No. 3831

INSTRUMENT # 201900038326
RECORDED IN THE CLERK'S OFFICE OF
HENRICO COUNTY ON
NOVEMBER 26, 2019 AT 03:15PM

HEIDI S. BARSHINGER, CLERK
RECORDED BY: SCG

EXHIBIT K

**From:** Adam Gutermuth <Adam.Gutermuth@royalunited.com>
**Date:** January 13, 2020 at 1:40:22 PM EST
**To:** "tigershb83@yahoo.com" <tigershb83@yahoo.com>
**Subject: Equity Experts Payoff**

Hi Don,

This is the payoff for the lien from your HOA.



*Read My Reviews!*

## Adam Gutermuth

**Loan Advisor  NMLS# 1755418**

Adam.Gutermuth@royalunited.com

Office: **(317) 593-3805** | Fax: (260) 624-1117

**Royal United Mortgage LLC.  NMLS #13390**

7999 Knue Road Ste 300, | Indianapolis, IN 46250



EXHIBIT L

Any interest rate or settlement cost structure is subject to change. A final interest rate and settlement cost structure will be approved and decided by the client prior to closing and upon receipt of approved income verification, a satisfactory appraisal, and clear title work.

CONFIDENTIALITY NOTICE: This electronic message, including any attachment(s), is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. If you are not the intended recipient of this message or an agent responsible for delivering it to the intended recipient, please notify the sender immediately by replying to this message and then delete the original message and any copies of it from your computer system. Any use, dissemination, distribution, or reproduction of this message and/or any of its attachments (if any) by unintended recipients is strictly prohibited and may be unlawful.

Status Letter: 1900 Airy Circle, Richmond
Knollingwood Townhouse Association, Inc. - Ascgirtc
Ourfile: 3831
Requested by:

January 9, 2020

Don Damron
4435 Waterfront Dr Ste 400
Glen Allen VA 23060



**EQUITY EXPERTS**
ASSOCIATION COLLECTION SPECIALISTS

2391 Pontiac Rd. – Auburn Hills, MI 48326
♦ (248) 601-6766 ♦ (855) 321-3973 ♦
info@equityexperts.org

*EQUITYEXPERTS.ORG, LLC IS A DEBT COLLECTOR.  THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

This letter is in response to a request for an association dues status letter regarding the balance owed to **Knollingwood Townhouse Association, Inc.** (the "Association") for the property located at 1900 Airy Circle, Richmond VA. Equityexperts.org, LLC is the Association's agent and is responding on its behalf.

The Total Balance stated below represents all amounts owed to the Association through , the good through date.  Equity Experts will disburse your payment to the Association once received.  If paid in full, the Association will release any exiting liens and or judgments. If the Total Balance is not paid in full by the good through date, you must request an updated payoff.

| | | |
|---|---|---|
| Principal Balance: | | $4343.18 |
| Collection/Legal Fees: | | $4395.66 |
| Additional Assessments through the good through date: | | $ |
| Additional Late Fees through the good through date: | | $ |
| Additional Collection Charges through the good through date: | | $ |
| Management New Account Setup & Transfer Fee **(Buyer):** | | $ |
| Rush Fee: | | $ |
| Interest: | | $.0 |
| TOTAL ASSOCIATION BALANCE: | | $8738.84 |

*Please be advised that you are required to disclose to the Association, the new owner's mailing address, and contact information and a copy of the warranty or covenant deed to the Association upon closing.  You can email that information to payoffs@equityexperts.org or include it with the check to the address below.*

Please make a check or money order **payable to Equity Experts** and mail it, along with the new owners' contact information and a copy of the new warranty or covenant deed, to:

*Equity Experts*
*2391 Pontiac Road, Auburn Hills, MI 48326*

Please contact our office if you need any additional information, or if you have any questions.

Thank you,

Equity Experts



**EQUITY EXPERTS**
ASSOCIATION COLLECTION SPECIALISTS

2391 Pontiac Rd. • Auburn Hills, Michigan 48326

(248) 601-6766 • (855) 321-3973 • info@equityexperts.org

12/27/2019

Don Damron
4435 Waterfront Dr, Ste 400
Glen Allen, VA 23060



   Re: Creditor: KNOLLINGWOOD TOWNHOUSE ASSOCIATION, INC.
      Property: 1900 Airy Circle

Dear Don Damron:

  Equity Experts represents the above referenced Creditor and is writing to provide you with Notice of the Creditor's intent to foreclose on outstanding liens for assessments against the above referenced property.  The lien(s) upon which the Creditor is foreclosing are as follows:

  1. Date of Lien: 07/18/2019
    Instrument No: 201900021035
    Amount Secured:  $3700.78

  **TO SATISFY THE LIEN(S) YOU MUST PAY ALL AMOUNTS DUE TO THE CREDITOR BY 02/25/2020.  YOU MAY HAVE OUTSTANDING BALANCES ON YOUR ACCOUNT NOT REFLECTED IN THE ABOVE REFERENCED LIENS.  TO OBTAIN THE CURRENT PAYOFF OR TO MAKE PAYMENT ARRANGEMENTS, PLEASE CONTACT THE CREDITOR'S AGENT, EQUITY EXPERTS, AT (855) 321-3973. FAILURE TO SATISFY THE DEBT SECURED BY THE LIEN(S) ON OR BEFORE THE DATE STATED HEREIN MAY RESULT IN THE SALE OF THE PROPERTY.**

  You have the right to bring a court action in the circuit court of the county or city where the Property is located to assert the nonexistence of the debt or any other defense you may have to the sale.

  This is an attempt to collect a debt and any information obtained may be used for that purpose.

        Sincerely,

        Equity Experts

EXHIBIT M

**VIRGINIA:**

### IN THE CIRCUIT COURT FOR HENRICO COUNTY

| | |
|---|---|
| **DON DAMRON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **KNOLLINGWOOD TOWNHOUSE** | ) |
| **ASSOCIATION** | ) |
| | ) |
| **and** | ) |
| | ) |
| **EQUITY EXPERTS.ORG, LLC,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### PLAINITFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KNOLLINGWOOD TOWNHOUSE ASSOCIATION

Pursuant to Rule 4:9 of the Rules of the Supreme Court of Virginia, Plaintiff Donald Damron (hereinafter "Mr. Damron" or "Plaintiff"), by counsel, hereby serves this First Request for Production of Documents on Defendant Knollingwood Townhouse Association ("HOA") to be answered in writing, under oath, in accordance with the Rules of the Supreme Court of Virginia.

### INSTRUCTIONS

In addition to the Instructions set forth in Plaintiff's First Set of Interrogatories, the following additional Instructions shall apply to this First Request for Production of Documents.

1.     Pursuant to Rule 4:9(iii)(A), the Documents you produce in response to the Requests for Production of Documents shall be organized and labeled to correspond to the Request to which they are responsive.

2.     The Request for Production of Documents explicitly requires production of all electronically stored information (ESI).  ESI includes electronic communications (i.e. emails,

1

instant messages, voicemails, and text messages), electronic files (i.e. Microsoft Office files), databases, and webpages. Please produce your ESI in the following format:

a.    "Frozen" images such as Tagged Image File Format ("TIFF" images) with searchable extracted text files (or OCR for electronically stored images), and included the following metadata fields:

    i.    <u>Non-email Files</u>:   Author; DocType or FileType; Custodian; Original Filename; Creation date/time; Modification date/time; Last access date/time; Document Text.

    ii.    <u>Emails</u>:  Custodian; Production filename/path; From; To; CC; BCC; Sent date/time; Received date/time; Subject; Conversation ID; Attachment count; Document text.

b.    Alternatively, we request that you produce your ESI in its native format.

## DEFINITIONS

1.    "Person" means an individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, and agency or political subdivision of the State, a court, and any other governmental entity.

2.    "Plaintiff" and "Mr. Damron" means Plaintiff Donald Damron and any of his agents, attorneys, representatives, relatives and all other persons acting, understood to be acting, or purporting to act on his behalf or under his direction and control.

3.    "Equity" means Defendant equityexperts.org, LLC and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees,

attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

4.      "HOA" means Defendant Knollingwood Townhouse Association and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees, attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

5.      "Document" means writings of every kind, source, and authorship, including Electronically Stored Information ("ESI"), in your possession, custody, or control, or known by you to exist.  The term includes writings, drawings, graphs, charts, photographs, sound recordings (including voice mail), images and other data stored in any medium from which information can be obtained and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.

6.      "Property" means the real property owned by Mr. Damron located at 1900 Airy Circle, Henrico, Virginia 23238.

7.      "Settlement" means the written Settlement Agreement and Release entered into by Mr. Damron and the HOA on September 15, 2016, agreeing to a six-month payment plan for prior catch-up payments totaling $2,094.35, and releasing/discharging any claims against Mr. Damson concerning the prior debt.

8.      "Lien" means the Memorandum of Lien filed by Equity against the Property on July 11, 2019 in the Henrico County Circuit Court.

9.     "Deed of Appointment of Trustee" means the Deed of Appointment of Trustee filed and recorded by Equity on November 12, 2019 in the Henrico County Circuit Court, by which it appointed Patriot Trustee Service, LLC as Trustee for the purpose of selling the Property.

10.    "Foreclosure Notice" means the notice Equity sent Mr. Damron on December 29, 2019, communicating its intent to foreclose on the Property due to his failure to satisfy the Lien.

11.    "Assessment(s)" means the monthly fees that HOA charges to homeowners in exchange for the provision of certain services, including maintenance of individual homeowner lots, as well as common areas.

12.    "Homeowner" refers to a resident in the Knollingwood Townhomes neighborhood in Henrico County, Virginia and a member of the HOA.

13.    "Assessment Status Letter" means the January 9, 2020 letter sent by Equity to Royal United Mortgage, LLC regarding the alleged payoff amount on Plaintiff's assessment account with HOA, including collections charges and attorney's fees (referred to in the Complaint as the "HOA Status Letter").

14.    "Mortgage Company" or "Royal United" means Royal United Mortgage, LLC, the mortgage lender who Mr. Damron engaged to refinance his mortgage on the Property in December 2019.

## REQUEST FOR PRODUCTION OF DOCUMENTS

1.     All documents and tangible evidence identified, described in, or used to respond to the HOA's responses to Plaintiffs' Interrogatories or Requests for Admissions.

**RESPONSE:**

2.      All records of communications made between the HOA and Mr. Damron concerning the unpaid assessments, including any communications regarding issues with lawn maintenance.

**RESPONSE:**

3.      All records of communications made between the HOA and Equity concerning the collection efforts against Mr. Damron, the Lien, and foreclosure proceedings against Mr. Damron.

**RESPONSE:**

4.      All records of communications made between the HOA and Royal United Mortgage, LLC concerning the collection efforts against Mr. Damron, the Lien, and foreclosure proceedings against Mr. Damron.

**RESPONSE:**

5.      All documents provided by the HOA to Equity verifying the amount of Mr. Damron's allegedly unpaid debt.

**RESPONSE:**

6.      All internal written policies and procedures regarding the collection of unpaid assessments and referral to collections agencies.

**RESPONSE:**

7.    All documents and records of assessment payments made by Mr. Damron, including all statements of accounts.

**RESPONSE:**

8.    All records of maintenance requests made by Mr. Damron in 2015.

**RESPONSE:**

9.    Any contract between the HOA and Equity regarding collection against Mr. Damron.

**RESPONSE:**

10.    Any further documents maintained by the HOA concerning the Property and/or Mr. Damron.

**RESPONSE:**

Dated: May 20 2020

Respectfully submitted,

**DON DAMRON**

Charles G. Meyer, III (VSB No. 34146)
D. Patrick Callahan (VSB No. 87366)
Katherine M. Rockwell (VSB No. 93733)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 403-7110
Email: *cmeyer@ohaganmeyer.com*
Email: *pcallahan@ohaganmeyer.com*
Email: *krockwell@ohaganmeyer.com*

*Counsel for Plaintiff*

## CERTIFICATION OF SERVICE

I certify that on the 20 day of May, 2020, I caused a true and accurate copy of the foregoing to be served by U.S. Mail delivery, postage prepaid to the following:

Community Group Inc., Registered Agent
3901 Westerre Parkway, Suite 100
Henrico, Virginia 23233

*Counsel for Plaintiff*

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR HENRICO COUNTY

| | |
|---|---|
| **DON DAMRON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **KNOLLINGWOOD TOWNHOUSE** | ) |
| **ASSOCIATION** | ) |
| | ) |
| **and** | ) |
| | ) |
| **EQUITY EXPERTS.ORG, LLC,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## PLAINITFF'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT
## KNOLLINGWOOD TOWNHOUSE ASSOCIATION

Pursuant to Rule 4:11 of the Rules of the Supreme Court of Virginia, Plaintiff Donald Damron (hereinafter "Mr. Damron" or "Plaintiff"), by counsel, hereby serves the First Set of Requests for Admission on Defendant Knollingwood Townhouse Association ("HOA") to which a response is required in accordance with the Rules of the Supreme Court of Virginia.

## INSTRUCTIONS

1.      In accordance with Rule 4:11(a), you shall answer each Request truthfully and provide specific denials or reasons why you cannot truthfully admit or deny the matter requested. If you object to any Request, state the reason for your objection and respond to those parts of the Request to which you do not object.

2.      If you perceive any ambiguities in a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering.

1

3.      If a privilege not to answer is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege, and the legal and factual basis for each such claim of privilege.

4.      If a refusal to answer a Request is stated on grounds of burdensomeness, identify the number and nature of Documents needed to be searched, the location of the Documents, and the number of person hours and costs required to conduct the search.

## DEFINITIONS

1.      "Person" means an individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, and agency or political subdivision of the State, a court, and any other governmental entity.

2.      "Plaintiff" and "Mr. Damron" means Plaintiff Donald Damron and any of his agents, attorneys, representatives, relatives and all other persons acting, understood to be acting, or purporting to act on his behalf or under his direction and control.

3.      "Equity" means Defendant equityexperts.org, LLC and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees, attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

4.      "HOA" means Defendant Knollingwood Townhouse Association and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees, attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

5.      "Document" means writings of every kind, source, and authorship, including Electronically Stored Information ("ESI"), in your possession, custody, or control, or known by you to exist. The term includes writings, drawings, graphs, charts, photographs, sound recordings (including voice mail), images and other data stored in any medium from which information can be obtained and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.

6.      "Property" means the real property owned by Mr. Damron located at 1900 Airy Circle, Henrico, Virginia 23238.

7.      "Settlement" means the written Settlement Agreement and Release entered into by Mr. Damron and the HOA on September 15, 2016, agreeing to a six-month payment plan for prior catch-up payments totaling $2,094.35, and releasing/discharging any claims against Mr. Damson concerning the prior debt.

8.      "Lien" means the Memorandum of Lien filed by Equity against the Property on July 11, 2019 in the Henrico County Circuit Court.

9.      "Deed of Appointment of Trustee" means the Deed of Appointment of Trustee filed and recorded by Equity on November 12, 2019 in the Henrico County Circuit Court, by which it appointed Patriot Trustee Service, LLC as Trustee for the purpose of selling the Property.

10.     "Foreclosure Notice" means the notice Equity sent Mr. Damron on December 29, 2019, communicating its intent to foreclose on the Property due to his failure to satisfy the Lien.

11.     "Assessment(s)" means the monthly fees that HOA charges to homeowners in exchange for the provision of certain services, including maintenance of individual homeowner lots, as well as common areas.

12.     "Homeowner" refers to a resident in the Knollingwood Townhomes neighborhood in Henrico County, Virginia and a member of the HOA.

13.     "Assessment Status Letter" means the January 9, 2020 letter sent by Equity to Royal United Mortgage, LLC regarding the alleged payoff amount on Plaintiff's assessment account with HOA, including collections charges and attorney's fees (referred to in the Complaint as the "HOA Status Letter").

14.     "Mortgage Company" or "Royal United" means Royal United Mortgage, LLC, the mortgage lender who Mr. Damron engaged to refinance his mortgage on the Property in December 2019.

## REQUESTS FOR ADMISSION

1.      Admit that the HOA did not provide Mr. Damron with a copy of the HOA's declaration or the HOA disclosure packet at the time he purchased the Property.

**ANSWER:**

2.      Admit that in 2015 Mr. Damron notified the HOA of numerous maintenance issues related to the Property, including but not limited to inadequate lawn care, non-existent leaf collection, broken doors attached to the gate around the Property, and dilapidated steps outside the Property which posed a safety risk.

**ANSWER:**

3.      Admit that the HOA did not address the maintenance issues described in Request for Admission No. 2 prior to the filing of a warrant in debt against Mr. Damron on December 7, 2015 in the Henrico General District Court, Case No. GV15-24479 (referred to in the Complaint as "the Lawsuit").

**ANSWER:**

4

4.    Admit that Mr. Hodges, the attorney of record for the HOA in the Lawsuit, had the authority as the HOA's lawyer and agent to enter into the Settlement on behalf of HOA.

**ANSWER:**

5.    Admit the genuineness of the September 15, 2016 Settlement Agreement and Release between the HOA and Mr. Damron to settle the warrant in debt filed by the HOA on December 7, 2015, in the Henrico General District Court (referred to in the Complaint as "the Lawsuit"), attached to the Complaint as **Exhibit E**.

**ANSWER:**

6.    Admit that by executing the Settlement, HOA, through counsel, affirmed Mr. Damron's prior catch-up payments totaling $2,094.35 in accordance with the schedule agreed to by counsel for HOA.

**ANSWER:**

7.    Admit that the Settlement released and discharged all claims related to prior allegedly unpaid HOA dues upon the final payment of $298.27.

**ANSWER:**

8.    Admit that Mr. Damron made the final payment at the time the Settlement was executed by providing a cash payment to Mr. Hodges, counsel for HOA.

**ANSWER:**

9.    Admit the genuineness of the letter sent by counsel for the HOA to the Henrico County General District Court on September 16, 2016, (referred to in the Complaint as the "Dismissal Notice") notifying the Court that the case was dismissed with prejudice pursuant to the Settlement Agreement, attached to the Complaint as **Exhibit F**.

**ANSWER:**

10. Admit that HOA engaged Equity to conduct debt collection efforts against Mr. Damron on behalf of the HOA despite entering into the Settlement with Mr. Damron.

**ANSWER:**

11. Admit that Mr. Damron contacted HOA in 2016 to inform HOA of the debt collection efforts by Equity related to alleged unpaid assessments.

**ANSWER:**

12. Admit that the HOA did not prevent Equity from continuing debt collection efforts against Mr. Damron despite its knowledge of the Settlement.

**ANSWER:**

13. Admit that Mr. Damron paid post-Settlement assessments in 2018 and 2019 by sending monthly checks to HOA, and/or it's agent(s), in the amount of $201.00 each.

**ANSWER:**

14. Admit the genuineness of the letter sent by the HOA to Mr. Damron on March 12, 2018 stating that Mr. Damron continued to owe the HOA for prior years' assessments, attached to the Complaint as **Exhibit I**.

**ANSWER:**

15. Admit that Mr. Damron contacted the HOA and/or its agents in March 2018 to dispute the alleged debt related to unpaid assessments.

**ANSWER:**

16. Admit the genuineness of the correspondence between Mr. Damron and counsel for the HOA regarding the Settlement, a copy of which is attached to the Complaint as Exhibit D.

**ANSWER:**

6

17.     Admit that the HOA did not provide Mr. Damron with a statement of his account—including but not limited to any alleged debts related to assessments, attorney's fees or collections costs—at any point in 2017, 2018 or 2019.

**ANSWER:**

18.     Admit that the HOA and/or its agent(s), including but not limited to Equity, cashed all checks paid to it by Mr. Damron toward post-Settlement assessment payments.

**ANSWER:**

19.     Admit that the HOA applied some of Mr. Damron's assessment payments from August of 2018 through July of 2019 toward assessment payments that were allegedly due prior to August of 2018.

**ANSWER:**

20.     Admit the genuineness of the HOA's January 9, 2020 Assessment Status Letter concerning Mr. Damron's account, attached to the Complaint as **Exhibit L**.

**ANSWER:**

21.     Admit that the HOA did not send a copy of the Assessment Status Letter to Mr. Damron.

**ANSWER:**

22.     Admit that the Mortgage Company paid the Lien amount by transmitting full payment to HOA and/or its agent(s), including Equity.

**ANSWER:**

23.     Admit that Mr. Damron did not personally make any payment towards the Lien amount.

**ANSWER:**

7

Dated: May 20 2020

Respectfully submitted,

DON DAMRON

_____

Charles G. Meyer, III (VSB No. 34146)
D. Patrick Callahan (VSB No. 87366)
Katherine M. Rockwell (VSB No. 93733)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 403-7110
Email: *cmeyer@ohaganmeyer.com*
Email: *pcallahan@ohaganmeyer.com*
Email: *krockwell@ohaganmeyer.com*

*Counsel for Plaintiff*

8

## CERTIFICATION OF SERVICE

I certify that on the 20 day of May, 2020, I caused a true and accurate copy of the foregoing to be served by U.S. Mail, postage pre-paid, to the following:

Community Group Inc., Registered Agent
3901 Westerre Parkway, Suite 100
Henrico, Virginia 23233

*Counsel for Plaintiff*

VIRGINIA:

### IN THE CIRCUIT COURT FOR HENRICO COUNTY

| | |
|---|---|
| **DON DAMRON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.** |
| | ) |
| **KNOLLINGWOOD TOWNHOUSE** | ) |
| **ASSOCIATION** | ) |
| | ) |
| **and** | ) |
| | ) |
| **EQUITY EXPERTS.ORG, LLC,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## PLAINITFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT
## KNOLLINGWOOD TOWNHOUSE ASSOCIATION

Pursuant to Rule 4:8 of the Rules of the Supreme Court of Virginia, Plaintiff Don A. Damron (hereinafter "Mr. Damron" or "Plaintiff"), by counsel, hereby serves his First Set of Interrogatories on Defendant Knollingwood Townhouse Association ("HOA") to which a response is required in accordance with the Rules of the Supreme Court of Virginia.

### INSTRUCTIONS

1.     In accordance with Rule 4:8(d), you shall answer each Interrogatory "separately and fully under oath, unless it is objected to." If you object to any Interrogatory, state the reason for your objection and respond to those parts of the Interrogatory to which you do not object.

2.     If you perceive any ambiguities in a question, instruction, or definition, set forth the matter deemed ambiguous and the construction used in answering.

3.      If a privilege not to answer is claimed, identify each matter as to which the privilege is claimed, the nature of the privilege, and the legal and factual basis for each such claim of privilege.

4.      If a refusal to answer an Interrogatory is stated on grounds of burdensomeness, identify the number and nature of Documents needed to be searched, the location of the Documents, and the number of person hours and costs required to conduct the search.

5.      In answering these Interrogatories, furnish all information that is available to you and/or your agents.  If, after exercising due diligence, any Interrogatory cannot be answered in full, answer to the extent possible and specify the reasons for your inability to answer.

6.      Where the identification of a Person is required, such identification shall include the name, present or last known home address, present or last known business address, telephone number (including area code), title or occupation, and employer.  Where the Person identified is a corporation, firm or other entity, such identification shall also include the name of each individual connected with that corporation, firm, or entity with whom contact was made, the present or last known home address of such person, the present or last known business address of such person, telephone number (including area code), and the title or occupation of such person.

7.      Where the identification of an oral communication is required, such identification shall include the persons who were present during the communication and set forth a brief description of the oral communication(s) and provide the date, location or means of the communication.  If a date is an estimate, please so state.

8.      Where the identification of a Document is required, such identification shall include the name of the author or originator, the name of each addressee, including the addressee of any copy, the date which the Document bears, a general description of its contents, the nature of the

Document (i.e. letter, memorandum, email, etc.) and the name of the present custodian of the original or originals and of each copy thereof bearing any markings or notation not found on the original.  In lieu of identifying a Document, you may attach a copy of the original and a copy of any non-identical copies to your answers to these Interrogatories.

## DEFINITIONS

1.    "Person" means an individual, general or limited partnership, joint stock company, unincorporated association or society, municipal or other corporation, incorporated association, limited liability partnership, limited liability company, the State, and agency or political subdivision of the State, a court, and any other governmental entity.

2.    "Plaintiff" and "Mr. Damron" means Plaintiff Donald Damron and any of his agents, attorneys, representatives, relatives and all other persons acting, understood to be acting, or purporting to act on his behalf or under his direction and control.

3.    "Equity" means Defendant equityexperts.org, LLC and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees, attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

4.    "HOA" means Defendant Knollingwood Townhouse Association and any affiliated persons or entities, including, but not limited to, all agents, officers, directors, representatives, employees, attorneys, accountants, successor entities, predecessor entities, parents, subsidiaries, affiliates and persons acting directly or indirectly for or on its behalf.

5.    "Document" means writings of every kind, source, and authorship, including Electronically Stored Information ("ESI"), in your possession, custody, or control, or known by you to exist.  The term includes writings, drawings, graphs, charts, photographs, sound recordings

3

(including voice mail), images and other data stored in any medium from which information can be obtained and information stored in, or accessible through, computer or other information storage or retrieval systems, together with the codes and/or programming instructions and other materials necessary to understand and use such systems.

6.     "Property" means the real property owned by Mr. Damron located at 1900 Airy Circle, Henrico, Virginia 23238.

7.     "Settlement" means the written Settlement Agreement and Release entered into by Mr. Damron and the HOA on September 15, 2016, agreeing to a six-month payment plan for prior catch-up payments totaling $2,094.35, and releasing/discharging any claims against Mr. Damson concerning the prior debt.

8.     "Lien" means the Memorandum of Lien filed by Equity against the Property on July 11, 2019 in the Henrico County Circuit Court.

9.     "Deed of Appointment of Trustee" means the Deed of Appointment of Trustee filed and recorded by Equity on November 12, 2019 in the Henrico County Circuit Court, by which it appointed Patriot Trustee Service, LLC as Trustee for the purpose of selling the Property.

10.     "Foreclosure Notice" means the notice Equity sent Mr. Damron on December 29, 2019, communicating its intent to foreclose on the Property due to his failure to satisfy the Lien.

11.     "Assessment(s)" means the monthly fees that HOA charges to homeowners in exchange for the provision of certain services, including maintenance of individual homeowner lots, as well as common areas.

12.     "Homeowner" refers to a resident in the Knollingwood Townhomes neighborhood in Henrico County, Virginia and a member of the HOA.

4

13.    "Assessment Status Letter" means the January 9, 2020 letter sent by Equity to Royal United Mortgage, LLC regarding the alleged payoff amount on Plaintiff's assessment account with HOA, including collections charges and attorney's fees (referred to in the Complaint as the "HOA Status Letter").

## INTERROGATORIES

1.    Identify all employees who have worked for HOA from 2015 to present, including the periods of employment for each employee and, in doing so, identify which of the employees are charged with maintaining HOA's assessment records, as well as evaluating and collecting, or sending to collections, unpaid HOA assessments.

**ANSWER:**


2.    Describe how the HOA maintains records regarding assessments, the payment thereof, and any outstanding payments from 2015 to present.  Identify and include a description of any software or other program utilized in maintaining such records.

**ANSWER:**


3.    Describe the HOA's policies and procedures regarding notification of an unpaid assessment fee to a homeowner and, in doing so, note any changes in the policies and procedures from 2015 to present.

**ANSWER:**

4.      Identify the date and amount of every assessment fee the HOA contends that Mr. Damron did not timely pay from 2015 to present, including any late fees or other charges related to such assessment payments, as well as a record of when the corresponding payment was received.

**ANSWER:**

5.      Describe the HOA's policies and procedures regarding engaging outside collection attorneys and/or agencies to collect on outstanding debts of homeowners, including but not limited to outstanding debts involving unpaid assessment fees.

**ANSWER:**

6.      Identify any and all communications made between HOA and Equity regarding collection efforts directed at Mr. Damron, whether it be by telephone, email, letter, or any other form, and provide a brief summary of each such communication.

**ANSWER:**

7.      Describe the basis for HOA engaging Equity to begin collection efforts against Mr. Damron despite HOA's execution of the Settlement.

**ANSWER:**

8.      Identify any and all communications made between the HOA and Equity regarding the decision to file and record the Lien, including the name(s) of the individual(s) who were involved in making that decision.

**ANSWER:**

9.    Identify any and all communications made between the HOA and Equity regarding the decision to initiate foreclosure on the Property, including filing and recording the Deed of Appointment of Trustee and sending the Foreclosure Notice, as well as the name(s) of the individuals(s) who were involved in making such decision(s).

**ANSWER:**

10.    State all persons known to the HOA that would have relevant information concerning the allegations against HOA contained in the Complaint and, in doing so, briefly state the involvement of such persons to the claims included in Mr. Damron's Complaint against the HOA.

**ANSWER:**

11.    State the basis for, and provide a description of, the amounts included in the Assessment Status Letter, including the principal and any collections costs or attorney's fees, as well as the name(s) of any employees who were involved in calculating such amounts and/or who were involved in making the decision to compile and transmit the Assessment Status Letter to Royal United Mortgage, LLC.

**ANSWER:**

Dated: May 20, 2020

Respectfully submitted,

**DON DAMRON**

Charles G. Meyer, III (VSB No. 34146)
D. Patrick Callahan (VSB No. 87366)
Katherine M. Rockwell (VSB No. 93733)
O'Hagan Meyer, PLLC
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Telephone: (804) 403-7100
Facsimile: (804) 403-7110
Email: *cmeyer@ohaganmeyer.com*
Email: *pcallahan@ohaganmeyer.com*
Email: *krockwell@ohaganmeyer.com*

*Counsel for Plaintiff*

8

## CERTIFICATION OF SERVICE

I certify that on the $20$ day of May, 2020, I caused a true and accurate copy of the foregoing to be served by U.S. Mail delivery, postage prepaid to the following:

Community Group Inc., Registered Agent
3901 Westerre Parkway, Suite 100
Henrico, Virginia 23233

_____
*Counsel for Plaintiff*

9